[No. 296-1. Division One—Panel 2. March 22, 1971.]

LAURA WEBER, *Respondent and Cross-appellant,* v. CAROLE BIDDLE *et al., Defendants,* ROCKY MOUNTAIN FIRE & CASUALTY COMPANY, *Appellant.*

LAURA WEBER, *Respondent,* v. ROCKY MOUNTAIN FIRE & CASUALTY COMPANY, *Appellant.*

*Murray, Dunham & Waitt* and *Wayne Murray,* for appellant.

*Clinton, Moats, Andersen & Fleck* and *James A. Andersen,* for respondent and cross-appellant.

FARRIS, A.C.J.—At a jury trial in January of 1966 Mrs. Laura Weber was awarded $57,500 for injuries which she received in an automobile accident on April 19, 1962, at the intersection of Bothell Way and 73rd N.E. in Seattle. That judgment was appealed and affirmed by the Supreme Court. *See Weber v. Biddle,* 72 Wn.2d 22, 431 P.2d 705 (1967). Thereafter, Mrs. Weber initiated actions against Rocky Mountain Fire and Casualty Company, the appellant herein, as the insurer of the defendants on a policy of automobile liability insurance. The actions were brought (1) on a writ of garnishment for the $10,000 insurance limits and (2) as assignee of Carole Day Biddle and Marie Day, her mother (the insureds), for the $47,500 sum in excess of the policy limits, claiming that Rocky Mountain was guilty of "bad faith" in not settling the primary action for the $10,000 policy limits. The two actions were consolidated for trial. Rocky Mountain appeals from a verdict in favor of Mrs. Weber on both causes of action. Mrs. Weber appeals from that portion of the judgment limiting recovery of interest to the $10,000 policy.

Rocky Mountain argues that it was not guilty of bad faith as a matter of law and further that Carole Biddle and Marie E. Day cannot recover because of the breach of the cooperation clause of the insurance policy.

Carole gave two versions of the accident to Rocky Mountain. In the first, she stated that she was driving the car and ran a red light. In the second, she stated that a 17-year-old boy was driving without her consent and against her wishes. The second version, if true, precludes coverage and exempts her and the insurance company from any liability whatsoever. Rocky Mountain alleges that it relied and had a right to rely on the second version. Rocky Mountain also argues that there can be no recovery against it on behalf of the insureds because of a breach of the cooperation clause of the insurance policy.

In order for the insurer to make a good-faith decision not to settle within policy limits, it must have made a diligent effort to thoroughly investigate the facts

upon which an intelligent and good-faith judgment may be predicated.[1] *See Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 473 P.2d 193 (1970); *Baker v. Northwestern Nat'l Cas. Co.*, 22 Wis. 2d 77, 125 N.W.2d 370 (1963).

The jury was instructed:

> The term "bad faith" as used in these instructions may be defined as involving insincerity, dishonesty, disloyalty, duplicity or deceitful conduct; it implies dishonesty, fraud or concealment. An honest mistake of judgment is not in and of itself bad faith and no single fact is necessarily decisive of this issue.

Instruction 10. There was no exception to this instruction. It therefore becomes the law of the case. *O'Brien v. Artz*, 74 Wn.2d 558, 445 P.2d 632 (1968); *Sebers v. Curry*, 73 Wn.2d 358, 438 P.2d 616 (1968).

■ Whether the conduct of the appellant met these criteria is a question of fact for the jury. Upon conflicting evidence the jury concluded that the conduct of the appellant amounted to bad faith. There is substantial evidence to support this finding. It will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959); *O'Byrne v. Spokane*, 67 Wn.2d 132, 406 P.2d 595 (1965).

Whether the Days breached the cooperation clause of the insurance policy was also a question of fact for the jury. In a comprehensive instruction,[2] the court summarized

---

[1] Under some circumstances, in order to act in good faith, an insurer may be required to disbelieve its insured. *See Klingman v. National Indem. Co.*, 317 F.2d 850 (7th Cir. 1963).

[2] "This case has as its background a personal injury action brought by Laura Weber, a widow, against Carole Biddle (formerly Carole Day) and Marie E. Day, her mother. That personal injury action arose as a result of an automobile accident which occurred near Kenmore in King County, Washington, the evening of April 19, 1962. In that action Mrs. Weber recovered a verdict of the jury and a judgment by the court against Mrs. Biddle and against Mrs. Day, and each of them, in the amount of $57,500.00 plus statutory costs.

"The case presently before you involves two suits which have been consolidated for trial. Both of these arise out of the aforesaid accident, claim and suit.

"Laura Weber is the plaintiff in the first suit and the Rocky Mounta[in] Fire & Casualty Company is the garnishee defendant. This is what

the claims of the parties. The jury was instructed that Mrs. Weber could not recover if (1) the Days had violated the

---

is known as a 'garnishment suit.' Laura Weber caused to be issued a Writ of Garnishment against the Rocky Mountain Fire & Casualty Company claiming as the liability insurance carrier of Carole Biddle (formerly Carole Day) and her mother, Maria E. Day it was indebted to Carole E. Day and Marie E. Day in the sum of $10,000 plus interest and costs the insurance limits of the liability policy theretofore issued by the defendant insurance company to Carole E. Day.

"Laura Weber is also the plaintiff in the second cause of action and the Rocky Mountain Fire & Casualty Company is the defendant. This second suit is known as an 'excess' suit and is a suit for $47,500.00 'excess' of Mrs. Weber's $57,500 judgment over and above the $10,000.00 bodily injury insurance limit of the insurance policy which is the subject of the garnishment proceedings, the first cause of action.

"In this second suit Mrs. Weber sues as the assignee of the rights of Carole Biddle (formerly Carole Day) and Marie E. Day, the policy holders under the Rocky Mountain Fire & Casualty Company policy involved in this case. The second suit is based on the alleged bad faith of the Rocky Mountain Fire & Casualty Company, its employees, and the attorney hired by the company to defend the Days.

"The insurance company as to both causes of action denies any bad faith and specifically states that Carole Day made fraudulent and false statements concerning the identity of the driver of the automobile involved in the collision and that these fraudulent and false statements were concurred in by Marie E. Day and that such false and fraudulent statements materially breached the terms and conditions of the cooperation clause of the policy thereby voiding insurance coverage.

"The Rocky Mountain Fire & Casualty Company further alleges that as to both causes of action there was an exclusion on the policy excluding any male driver under the age of 25 years and that the Days' vehicle at the time of the accident was being driven by Lyle Ordahl who was under the age of 25 without the permission of the insured and therefore there was no coverage afforded for the loss.

"Rocky Mountain Fire & Casualty Company further alleges that the Days failed to forward the suit papers to the company for over two months after the suit was filed and again materially breached the conditions of the policy requiring that all Notices of Claim or Suit be forwarded immediately to the company.

"The plaintiff denies these allegations on the part of the insurance company.

"The foregoing is merely a summary of the claims of the parties; you are not to take the same as proof of the matters claimed and you are to consider only those matters which are admitted or established by the evidence. These claims have been outlined solely to aid you in understanding the issues." Instruction 1.

cooperation clause or the notice of suit clause of the policy and (2) such violations were not waived by the defendant company. The jury resolved the issue against the appellant.

Rocky Mountain argues that it was error to give an instruction on waiver since there was a nonwaiver agreement signed by the Days and it defended under this reservation of rights.

■ A reservation of rights agreement is not a license for an insurer to conduct the defense of an action in a manner other than it would normally be required to defend. The basic obligations of the insurer to the insured remain in effect.

> It is clear, . . . that a nonwaiver agreement can be waived either expressly or impliedly by the insurer or its authorized representatives. Such agreements are construed strictly against the insurer and liberally in favor of the insured, and will not be extended beyond the exact terms of the agreements. In addition, such an agreement will not operate to prevent a waiver if it is vaguely or ambiguously drafted. Likewise, a general notice of reservation of rights failing to refer specifically to the policy provision upon which the insurer wished to rely may be insufficient to prevent a waiver or estoppel from arising from the insurer's control of the defense of the suit brought against the insured. . . .

> The mere obtaining of a nonwaiver agreement does not give the insurer a right to do anything it may wish to prejudice the rights of the insured and thereafter continue to rely upon the nonwaiver agreement, since such agreement may be waived by the insurer's subsequent conduct.

(Footnotes omitted.) 16A J. Appleman, Insurance Law & Practice § 9377 (Rev. ed. 1968). *See also Sheeren v. Gulf Ins. Co.*, 174 So. 380 (La. App. 1937).

> Non-waiver agreements are not so sacrosanct that they immunize an insurer from responsibility for any and all actions taken in adjusting a loss. The agreement being solely for the benefit of the insurer must be strictly construed against it under sound contract principles.

*Connecticut Fire Ins. Co. v. Fox,* 361 F.2d 1, 7 (10th Cir. 1966).

■ The reservation of rights in the present case is general in nature. It does not state the specific policy defenses upon which the insurer intends to rely. Rocky Mountain's counsel maintained complete control over the defense of this action and as such, a high fiduciary duty was owed by the insurer to the insured.[3] The insurer is not free to proceed through negotiation and defense stages of litigation safeguarding only its own interests and neglecting those of its insureds.

In *Meirthew v. Last,* 376 Mich. 33, 38, 135 N.W.2d 353 (1965) the insurer defended the original action under a general notice of reservation of rights. In the subsequent garnishment proceedings, a policy defense was asserted by the insurer. In holding the insurer liable for the amount of the judgment in the original action, the court noted:

> We hold the notice [of reservation of rights] legally insufficient; also that it came too late to avoid presumptive prejudice of Last's rights and plaintiff's consequential rights. The notice was vague and uncertain. It smacks of bad faith for want of specific reference to that clause of the policy the garnishee has pleaded. In no field of law is legal duty more rigidly enforced than in instances as at bar. The insurer must fulfill its policy-contracted obligation with utmost loyalty to its insured; not for the purpose of developing, secretly or otherwise, a policy defense. When a conflict of interest—even a mere possibility thereof—arises, the law suggests (if it does not require) that the insurer act promptly and openly, on peril of estoppel, preferably upon a record made in the pending case (if pending as here) with the court fully apprised of all necessary details; also that the insurer act thus on time for arms' length actions which may protect the respective rights of both parties to the contract of insurance.

It was proper for the trial court to instruct the jury on the issue of waiver. The acts of the Days regarding the

---

[3] *See Tyler v. Grange Ins. Ass'n, supra,* for a discussion of the relationship between insured and insurer.

breach of the cooperation clause and those of Rocky Mountain regarding its conflict of interest were before the jury. Whether or not the acts of the insurer so prejudiced the rights of the insureds as to amount to a waiver was a question of fact for the jury to determine.

■ Appellant argues that instruction 5 was erroneous in a second respect in that it instructed the jury that Laura Weber brought the garnishment action "directly and in her own right." Appellant contends that a garnishing creditor has no greater rights than those of the debtor. We agree, but the instruction merely indicated that Mrs. Weber had the right to bring the garnishment action directly and the bad-faith action as an assignee of the Days. The jury was instructed that there could be no recovery on either cause of action if it found a breach of the cooperation or notice of suit clauses by the Days and such violations were not waived by the insurer. Instructions must be read as a whole. *Samuelson v. Freeman,* 75 Wn.2d 894, 454 P.2d 406 (1969); *Roberts v. Goerig,* 68 Wn.2d 442, 413 P.2d 626 (1966).

■■ Respondent called Mr. Arthur Piehler, an attorney, as an expert witness to testify on the issue of conflict of interest. Appellant, in turn, called experts to testify on the same question. Error is assigned to the court's admission of this testimony.

The purpose of opinion evidence is to assist the trier of the fact in correctly understanding matters not within common experience, but, in passing upon the admissibility of such testimony, the court has a duty to see that the jury is not likely to be misled. Such are relevant considerations in weighing admissibility of proffered opinion testimony.

*Hill v. C. & E. Constr. Co.,* 59 Wn.2d 743, 745, 370 P.2d 255 (1962). As a general rule, the admissibility of expert testimony rests with the discretion of the trial court. Absent abuse thereof, this discretion will not be reversed on appeal. *Myers v. Harter,* 76 Wn.2d 772, 459 P.2d 25 (1969); *Ward v. J. C. Penney Co.,* 67 Wn.2d 858, 410 P.2d 614 (1966);

*Gerard v. Peasley*, 66 Wn.2d 449, 403 P.2d 45 (1965). The question of the conflict of interest was crucial in a determination of the issues. This is not an area within the common experience of laymen. We find no abuse of discretion in admitting this evidence.

The proposed instructions to which assignments of error 7, 8, 9 and 10 are directed are comments on the evidence. It would have been error to give them. Const. art. 4, § 16; *State v. Bogner*, 62 Wn.2d 247, 382 P.2d 254 (1963).

It was not error to refuse evidence that Mrs. Weber had been paid $10,000 under the uninsured motorist clause of her own insurance policy. That issue, if it was ever relevant, was resolved in the earlier action in which Mrs. Weber recovered the judgment of $57,500.

The trial court properly (1) denied appellant's motion challenging the sufficiency of the evidence, (2) refused to direct a verdict and (3) denied the motion for new trial or in the alternative judgment n.o.v.

Mrs. Weber cross-appeals from that portion of the judgment holding that interest was payable by Rocky Mountain only on that part of the judgment covered by its policy limits, to wit, $10,000.

The policy of insurance provided:

II. Defense, Settlement, Supplementary Payments: With respect to such insurance as is afforded by this policy for coverages A, D and E, the Company shall:

. . .

(b) (2) pay all expenses incurred by the Company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the Company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon; . . .

Rocky Mountain did not tender the policy limit amount into court. Respondent contends that under this clause, the insurer should pay the interest on $57,500, the amount of

the judgment. Appellant argues that if liable at all, it is only for the interest on the $10,000 policy limits.[4]

■ Insurance contracts, like other contracts, must be interpreted according to the evident intent of the parties. *Ames v. Baker*, 68 Wn.2d 713, 415 P.2d 74 (1966). Any ambiguities must be interpreted in the light most favorable to the insured. *Myers v. Kitsap Physicians Serv.*, 78 Wn.2d 286, 474 P.2d 109 (1970).

■ The clause in question is a standard one and is contained in many insurance contracts. The National Bureau of Casualty Underwriters formerly included this clause in their form of standard policy, but subsequently changed the form. In connection with this change, the bureau stated (circular No. 1311 and circular No. 990, dated December 5, 1956):

> "Several court cases have held that an insurer's obligation to pay interest extends only to that part of the judgment for which the insurer is liable. The respective rating committees have agreed that this is contrary to the intent. As a result, the wording with respect to payment of interest in the new Family Automobile Policy has been restated, in order that it be entirely clear that all interest on the entire amount of any judgment, which accrues after entry of the judgment, is payable by the insurer until the insurer has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the insurer's liability thereon.

Ramsey, *Interest on Judgments under Liability Insurance Policies*, Ins. L.J. 407, 411 (1957).

In *Powell v. T. A. & C. Taxi, Inc.*, 104 N.H. 428, 430, 188 A.2d 654 (1963), the New Hampshire Supreme Court considered an identical clause and stated:

> [T]he phrase "all interest" does not connote the thought of some interest, or part of the interest on the judgment but rather all interest on the judgment whatever its amount in relation to the policy limit.

The same clause was also before the court in *River Valley Cartage Co. v. Hawkeye-Security Ins. Co.*, 17 Ill. 2d 242,

---

[4]See Annot., 76 A.L.R.2d 983 (1961).

245, 161 N.E.2d 101, 76 A.L.R.2d 978 (1959) where the court noted:

> The phrase referring to interest uses the term "judgment" without qualification while in the same clause the phrase limiting the duration of the liability for interest refers to "such part of the judgment as does not exceed the limit of the company's liability thereon." Obviously the insurer knew how to qualify the term "judgment" to achieve the result that it urges. It did not do so.

The intent of the clause is that the insurer will pay interest on the entire amount of the judgment until policy limits are paid or tendered or deposited in court.[5] Rocky Mountain did not pay, tender or deposit the amount of policy limits into court. It is liable for interest on the full amount of the judgment.

Judgment affirmed in part and reversed in part.

JAMES and SWANSON, JJ., concur.

---

[5]For other cases holding the insurer liable for the interest on the entire amount of judgment see *Paul v. Dwyer,* 42 Pa. D. & C.2d 467 (1967); *Mayberry v. Home Ins. Co.,* 264 N.C. 658, 142 S.E.2d 626 (1965); *Coventry v. Steve Koren, Inc.,* 1 Ohio App. 2d 385, 205 N.E.2d 18, *aff'd,* 4 Ohio St. 2d 24, 211 N.E.2d 833 (1965); *Kraynick v. Nationwide Ins. Co.,* 80 N.J. Super. 296, 193 A.2d 419 (1963); *Baucum v. Great American Ins. Co.,* 370 S.W.2d 863 (Tex. 1963).