## 77211. CENTRAL OF GEORGIA RAILROAD COMPANY v. GEORGIA PORTS AUTHORITY.

(379 SE2d 540)

BEASLEY, Judge.

Blackwell, an employee of the appellant railroad, was injured when he attempted to remove a gangboard left between a warehouse platform and a freight car in the Ocean Terminal facilities of the appellee Ports Authority. Blackwell sued the railroad under the Federal Employers' Liability Act. The railroad brought a third-party complaint against the Authority pursuant to an agreement made in 1958 when the facility was sold to the Authority. Under it, the railroad was to perform all necessary switching service on the existing tracks, which were to be maintained by the Authority, and the Authority was to indemnify the railroad against any and all claims for damage to person or property arising from the operation of the switching services "excepting loss, damage, injury or homicide resulting from the sole negligence of the [railroad]."

Blackwell's claim was settled by the railroad. The Authority moved for summary judgment, contending that the indemnity agreement did not apply because the parties had modified it by adopting a common operating practice rendering the indemnity inapplicable when a railroad employee undertook to remove a gangboard left by Authority personnel so as to obstruct freight car movements. The court denied summary judgment. It held that issues of fact existed as to the parties' intention regarding any implied conditions in the indemnity agreement, specifically as to whether or not a procedure for removal of gangboards had been established.

After extensive discovery the railroad sought summary judgment, asserting that violation of the operating practice for removal of gangboards did not nullify the indemnity agreement. The court again denied summary judgment, ruling that a question of fact remained as to the parties' intent to modify the indemnity agreement. The railroad's application for immediate review was certified to this court and granted.

The evidence was undisputed that Blackwell was working as a switchman on a switch engine crew for the railroad on the evening shift, under an order from the Authority to switch out empty boxcars from a track adjacent to the platform of a warehouse. It was the Authority's responsibility prior to issuing this order to be certain that the cars were clear of all obstructions, including any gangboards it may have used in unloading the boxcars. This night, Authority per-

sonnel negligently failed to remove a gangboard from one of the freight cars. It was Blackwell's assigned responsibility to check the cars to make sure they were clear for switching, but he did not detect the gangboard and signaled the train engineer to couple the cars. As the train was moving Blackwell heard a noise and ordered the engineer to stop. Upon checking, Blackwell found the gangboard leaning against the side of a freight car. It was 11:00 p.m. and no Authority personnel were in the area to move the gangboard, so Blackwell attempted to shove it clear. In the process it fell on him causing permanent injury.

The Authority's general manager deposed that the Authority was responsible for clearing all gangboards from freight cars before giving orders to the railroad to switch cars, but that it failed to clear the gangboard; and that the long-standing "common practice" in such cases, although not written, was that the railroad would not move the gangboard but would call the Authority to move it, and if no one was available the order to switch out the cars would not be executed. A former railroad superintendent testified that the railroad had a written operating rule that no freight cars would be switched until all obstructions, including gangboards, were cleared; and that acting "from the practical standpoint" gangboards had been moved during the night shift by the railroad employees when no Authority personnel were available, to clear the track and enable the Authority's morning crews to proceed with their work schedule.

There was no evidence that these practices were intended by either the railroad or the Authority to modify the indemnity agreement. The Authority concedes this point. It argues that evidence of the procedures undertaken by the parties in violation of the switching agreement is evidence of the negligence of the non-complying party, which should be considered by the factfinder together with other evidence of negligence.

To defeat the indemnity agreement, the Authority must establish that Blackwell's injuries resulted "from the sole negligence" of the railroad. If not, the indemnity applies regardless of the relative negligence of the Authority or its liability to Blackwell. The indemnity is enforceable even if the Authority played no part in the chain of causation so long as the injury did not result from the *sole* negligence of the railroad.

As stated by this court in a prior decision concerning the very same agreement: "It is clear the intent of the parties was to save the railroad harmless for personal loss of railroad property as well as from third-party claims arising out of the railroad operations on the authority property while carrying out the authority's switching requirements. The only limitation to the authority's liability [is] where the loss or injury would be as the result of the sole negligence of the rail-

road with no contributing negligence by the authority." *Ga. Ports Auth. v. Central of Ga. R. Co.*, 135 Ga. App. 859, 864 (219 SE2d 467) (1975).

Consequently, enforcement of the indemnity provision turns exclusively on whether Blackwell's injury resulted from the sole negligence of the railroad. See *Stafford Enterprises v. American Cyanamid Co.*, 164 Ga. App. 646 (297 SE2d 307) (1982) and cases cited. Pretermitting any question of whether Blackwell's negligence can be imputed to the railroad (see in this regard *Radford v. Seaboard Coast Line R. Co.*, 122 Ga. App. 763, 764 (2) (178 SE2d 774) (1970)), the fact remains that there was undisputed evidence of negligence on the part of the Authority in failing to remove the gangboard. "[I]f the loss or injury is attributable, even partly, to the negligence of the indemnitor, the obligation to indemnify arises. [Cit.]" *Charter Bldrs. v. Sims Crane Svc.*, 150 Ga. App. 100, 101 (1) (256 SE2d 678) (1979); *Stafford Enterprises*, supra at 649.

There being no other permissible conclusion, summary adjudication in favor of the railroad was demanded.

*Judgment reversed. Banke, P. J., and Birdsong, J., concur.*

DECIDED FEBRUARY 14, 1989 —
REHEARING DENIED MARCH 1, 1989 — 

*Miller, Simpson & Tatum, William F. Hinesley III, John B. Miller*, for appellant.

*Chamlee, Dubus, Sipple & Walter, George H. Chamlee, Michael J. Bowers, Attorney General, Marion O. Gordon, First Assistant Attorney General, J. Robert Coleman, Daniel M. Formby, Senior Assistant Attorneys General*, for appellee.