A90A1174. SOUTHEAST ATLANTIC CARGO OPERATORS, INC.
v. FIRST STATE INSURANCE COMPANY.
(398 SE2d 264)

BEASLEY, Judge.

Southeast Atlantic Cargo Operators, Inc. (SEACO) appeals the judgment entered for First State Insurance Company which held First State was not obligated to provide "drop down" coverage.

SEACO leased a warehouse from the Georgia Ports Authority at which two of its stevedores were injured. In 1985, they sued GPA, which made a third-party claim against SEACO based on the indemnification clause in the lease. SEACO's primary insurer Midland Insurance Company assumed the defense and provided coverage for the third-party claim. Midland was declared insolvent in 1986. The Georgia Insurers Insolvency Pool then provided a defense for the third-party action but denied coverage.

SEACO had an excess insurance policy with First State, which it contends is ambiguous and requires First State to assume primary coverage.

The declarations page, source of the claimed ambiguity, contains "Limits of Liability: The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto I. $10,000,000 Single limit any one OCCURRENCE combined PERSONAL INJURY, PROPERTY DAMAGE and ADVERTISING INJURY or DAMAGE in excess of . . . *[t]he amount recoverable under the underlying insurance* [the Midland policy] as set out in

Schedule A attached. . . ." (Emphasis supplied.) This is the only use in the policy of "recoverable" modifying "underlying insurance."

The insuring agreement provides that First State will indemnify SEACO for "ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein stated. . . ."

Retained limit is defined in the following. "The Company shall be liable only for the ULTIMATE NET LOSS in excess of the greater of the INSURED'S: . . . UNDERLYING LIMIT — an amount equal to the *limits of liability indicated beside the underlying insurance* listed in the Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED . . . ." (Emphasis supplied.) Midland's listed limit was $500,000.

" ' "(U)nder Georgia law in attempting to ascertain the intentions of the parties, insurance contracts are governed by the ordinary rules of construction applicable to other contracts. [Cit.] The contract must be examined 'as a whole' in attempting to construe any portion thereof. (Cits.) 'Where the terms and conditions of a policy are unambiguous, the court must declare the contract as made by the parties . . . . Where the meaning is plain and obvious, it should be treated as literally provided therein.' *Genone v. Citizens Ins. Co. of N. J.,* 207 Ga. 83, 86 [(60 SE2d 125)] (1950) (citations omitted.)" ' *United States Fire Ins. Co. v. Capital Ford Truck Sales,* 257 Ga. 77, 78 (355 SE2d 428), quoting *Garmany v. Mission Ins. Co.,* 785 F2d 941, 945 (11th Cir. 1986) with approval." *Lamb Bros. Lumber Co. v. S. C. Ins. Co.,* 186 Ga. App. 51, 53 (366 SE2d 388) (1988). *Pilot Life Ins. Co. v. Morgan,* 94 Ga. App. 394, 398 (94 SE2d 765) (1956).

" 'The existence or non-existence of an ambiguity is itself a question of law for the court. [Cit.] If the court determines that there is an ambiguity, this does not automatically give rise to a jury question, however. (Cit.) At this point it becomes the duty of the court to attempt to resolve the ambiguity by applying the rules of construction set forth in OCGA § 13-2-2. (Cits.) It is only when the ambiguity remains after the statutory rules have been applied that the issue becomes one for the jury. (Cits.)' *Capital Ford Truck Sales v. U. S. Fire Ins. Co.,* 180 Ga. App. 413, 417 (1) (349 SE2d 201) (1986), rev'd and vacated on other grounds, 257 Ga. 77 (355 SE2d 428) (1987), 183 Ga. App. 242 (360 SE2d 78) (1987)." *McClintock v. Wellington Trade,* 187 Ga. App. 898, 902 (1) (371 SE2d 893) (1988).

SEACO argues that admitted dicta in *Capital,* supra, 257 Ga. at 81, supports its contention of ambiguity, as well as several cases from foreign jurisdictions dealing with the First State policy. SEACO acknowledges an opposing line of foreign cases holding as did the court below.

The statement in *Capital,* quoted from *Mission Nat. Ins. Co. v. Duke Transp. Co.,* 792 F2d 550, 553 (1) (5th Cir. 1986), as part of a

synopsis of cases from other jurisdictions dealing with excess coverage issues, was: "[w]hen an excess insurer uses the term 'collectible' or 'recoverable' it is agreeing to drop down in the event the primary coverage becomes uncollectible or unrecoverable. . . ." SEACO contends that the use of "recoverable" on the declarations page is such use and carries through the entire policy. This passing reference in *Capital* cannot be read to mandate drop-down coverage in the present case, for to do so would totally ignore the remainder of the contract entered into by the parties.

We conclude, as apparently did the court below, that the general statement on the declarations page does not negate the specific provisions defining coverage contained in the body of the policy. *Auto-Owners Ins. Co. v. Barnes*, 188 Ga. App. 439, 440 (1) (373 SE2d 217) (1988).

As have sister courts from other jurisdictions in adopting their reasoning, we find no ambiguity is created by the policy and that First State is not required to provide drop-down coverage here. *Radiator Specialty Co. v. First State Ins. Co.*, 651 FSupp. 439 (W.D.N.C. 1987), aff'd 836 F2d 193. (4th Cir. 1987); *Morbark Indus. v. First State Ins. Co.*, 429 NW2d 213 (Ct. App. Mich. 1988); *Werner Indus. v. First State Ins. Co.*, 548 A2d 188 (Sup. Ct. N.J. 1988).

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 11, 1990 —
REHEARING DENIED OCTOBER 25, 1990 —

*Bouhan, Williams & Levy, Edwin D. Robb, Jr., Joseph A. Mulherin III*, for appellant.

*Chamlee, Dubus, Sipple & Walter, George H. Chamlee, Frank A. Lightmas, Jr., Brennan, Harris & Rominger, Edward T. Brennan*, for appellee.