## A91A1133, A91A1134. GEORGIA PORTS AUTHORITY v. SOUTHEAST ATLANTIC CARGO OPERATORS; and vice versa.

### (414 SE2d 232)

ANDREWS, Judge.

Georgia Ports Authority (GPA) was sued by Meyer, an employee of Southeast Atlantic Cargo Operators (SEACO), and his wife for severe injuries suffered by Mr. Meyer when a four-tier high stack of wood pulp rolls fell and hit him while he was working as a stevedore in the GPA warehouse. The space where he was working was leased from GPA by SEACO.

GPA filed its third-party complaint against SEACO, claiming indemnification under the terms of the lease and that Meyer's injuries were the result of his own negligence and that of his employer.[1]

GPA then settled with Meyer for $1.3 million and trial was conducted to determine the relative fault of GPA and SEACO. The jury found GPA 60 percent negligent, SEACO 35 percent negligent, and Meyer 5 percent negligent. The court entered judgment against SEACO for 40 percent of the settlement amount plus interest and costs.

GPA appeals contending that, pursuant to the indemnification clause, SEACO was obligated to pay 100 percent of the settlement although only partially responsible for the injury. SEACO appeals the court's denial of its motion for judgment notwithstanding the verdict. The appeals are considered together.

Viewed in favor of the verdict, the evidence was that Meyer was the stevedore foreman in charge of a crew loading or "stuffing" containers with wood pulp rolls for loading onto a waiting ship. The rolls were unloaded from ground transportation by GPA workers and placed in a position of rest in the space rented by SEACO or other stevedores. In order to prevent damage to the rolls from moisture, pieces of lumber (dunnage) were placed under the bottom roll in each stack by a GPA stickman. The rolls were stacked in columns by GPA, not subject to control by SEACO.

All labor for the job was requested daily by the stevedoring companies from the hiring hall of the International Longshoremen's Association. SEACO's assistant vice president of operations, Mr. Streeton, determined the number of containers needed for a shipment, prepared the stowage plan for the shipment, and ordered the required number of crews for each day's work. For loading the wood pulp, Meyer had been assigned one crew, consisting of a clerk, a forklift operator, and a stickman whose job was to remove the dunnage as the rolls were taken from the point of rest to the containers. Prior to be-

---

[1] Meyer collected benefits under the Longshore & Harbor Workers' Compensation Act. 33 USCA § 901 et seq.

ginning the stuffing operation, Streeton and Meyer inspected the cargo at its point of rest, primarily to check the condition of the cargo. Meyer, 24 years old at the time, had never seen rolls fall and did not pay any particular attention to the stacking of the rolls.

In order to keep track of the rolls and their location in the containers, it was necessary to take certain information from the rolls. Because of his size, the clerk who was assigned to Meyer that day was unable to get to the rolls to obtain the information, and Meyer was helping by going into the aisles with him and calling out the information. The pulp rolls were stacked contiguously. Some of the rolls on the upper levels were offset from the roll directly beneath them by a number of inches. They were being removed one row at a time, creating aisles in the stacks. The stack which fell was the last in a row. After the forklift operator had removed the stack adjacent to it and backed out of the row, one of the workers yelled that the stack was falling. There was only one egress, and Meyer was struck by one of the 1,000 pound rolls as he ran from the aisle.

After the accident, the bottom roll of wood pulp was examined and it was discovered that the dunnage had been placed by GPA so that the support ceased about 15 inches from the outside of the roll. It was the contention of Meyer and SEACO that this improper placement created an imbalance so that when the adjoining stack was removed, the rolls fell of their own weight. GPA contended that the SEACO forklift operator may have bumped the stack in some way, although there was no evidentiary support for this position, and that SEACO had failed to properly train Meyer and to maintain a safe working environment.

On August 7, 1989, GPA filed its Motion for Partial Summary Judgment on the indemnification issue. The indemnification clause provides that "[l]essee (SEACO) shall indemnify Lessor [GPA] against any expense, loss or liability paid, suffered or incurred . . . as the result of Lessee's use of or occupancy of the demised premises, or Lessee's cargo operations on the demised premises, or the carelessness, negligence or improper conduct of Lessee, Lessee's visitors, agents, employees, patrons or licensees. Lessee's liability under this lease extends to the acts and omissions of any subtenant."

SEACO opposed indemnification, contending that any indemnification of GPA for its own negligence was against public policy. GPA, in its brief on summary judgment, stated that "GPA seeks only to enforce the terms of the indemnity provision requiring SEACO to be responsible for its own actions. . . . The indemnity provision is not void as against public policy, because it does not purport to absolve GPA from its own or sole negligence."

On August 31, 1989, the pretrial order was entered pursuant to OCGA § 9-11-16 and USCR 7.2. In it, the position of GPA on the

issue of indemnification was stated as seeking only to protect the GPA "against the consequences of SEACO's actions. The provision [of the lease] specifically requires indemnity from SEACO for 'expense, loss or liability paid, suffered or incurred' by GPA 'as the result of any breach by Lessee . . . as a result of Lessee's use or occupancy . . . Lessee's cargo operations . . . or the carelessness, negligence or improper conduct of Lessee.' The indemnity provision does not require indemnity for damages resulting from GPA's actions, nor is such indemnification sought."

GPA further alleged that SEACO failed to provide safe working conditions, failed to properly train employees, failed to suspend cargo operations until unsafe working conditions had been corrected, failed to coordinate cargo operations and failed to conduct operations under the terms of the lease with reasonable care and professional skill.

### Case No. A91A1133

1. It was not until the first day of the trial in April 1990 that GPA first voiced its argument that, based on *Arthur Pew Constr. Co. v. Bryan Constr. Co.*, 156 Ga. App. 780 (275 SE2d 384) (1980), if the jury found SEACO liable at all, under the indemnity clause, SEACO would be 100 percent liable for the settlement.

OCGA § 9-11-16 (b) provides that upon entry of the pretrial order, which was done here first in 1987 and then superseded in August 1989, that order "controls the subsequent course of the action unless modified at the trial to prevent manifest injustice."

Once entered, a party may not amend the order without leave of court or consent of the opposite party. OCGA § 9-11-15 (a); *Gaul v. Kennedy*, 246 Ga. 290, 291 (1) (271 SE2d 196) (1980). The burden is on the party seeking to amend the order to show lack of laches or lack of unexcusable delay in presenting the issue to the court. *Ostroff v. Coyner*, 187 Ga. App. 109, 113 (2) (369 SE2d 298) (1988).

Here, the change of position by GPA from proportional to 100 percent indemnification was not consented to by SEACO. In fact, that theory was vigorously argued against by SEACO.

The case was tried pursuant to a pretrial order agreed to by GPA stating that indemnification was only proportional. That order was never modified by the trial court and the change in position was not consented to by SEACO. There was no reason given for the failure of GPA to correct its position from the initiation of litigation in 1985 until the trial in 1990.

There was no error in the trial court's entry of judgment consistent with the pretrial order. See *Gilbert v. Meason*, 145 Ga. App. 662,

663 (1) (244 SE2d 601) (1978).[2]

## Case No. A91A1134

SEACO, in nine enumerations of error, complains of the denial of its motion for directed verdict and j.n.o.v. and the giving of certain jury charges. The first two enumerations deal specifically with jury charges and the remaining seven with the denial of the motions.[3] They will be dealt with in that fashion.

2. After the charge was given, the court asked for objections. Three objections were voiced by SEACO. First was to the charge regarding SEACO's obligation to provide a safe workplace because the premises did not belong to SEACO which was only an invitee. Second was the giving of a charge based on 33 USCA § 931,[4] the Longshoreman's Act, on the basis that the statute was not relevant to land based activity where tort principles are governed by state law. Finally, SEACO objected to the charge which indicated that SEACO could be negligent by allowing employees to go into a dangerous area. SEACO contended that it could not be negligent unless there was an "extraordinary hazard."

(a) The charge argued in the second enumeration was not objected to below and will not be considered here for the first time. OCGA § 5-5-24 (a); *Glenridge Unit Owners Assn. v. Felton*, 183 Ga. App. 858, 860 (4) (360 SE2d 418) (1987).

(b) The first enumeration contends the trial court erred in "charging the jury, under principles of federal shipboard maritime law, that SEACO had the primary responsibility for the safety of Mr. Meyer, where the accident occurred on land, where GPA actively created the negligent condition which injured Mr. Meyer, and where Mr. Meyer was an experienced employee who owed a duty of care to himself." The underlined portion of the enumeration was the subject of an objection below and will be addressed.

The objected-to portion of the charge was only part of the overall charge on the stevedore's obligation. The rest of the charge on the subject was that: "[a]s a stevedore employer, Seaco had the duty to provide all its employees, including Mr. Myers [sic], with a reasonably

---

[2] It is also unclear that the lease indemnity agreement is sufficient to amount to a waiver by SEACO of GPA's own negligence. *Borg-Warner Ins. Finance Corp. v. Executive Park Ventures*, 198 Ga. App. 70 (400 SE2d 340) (1990); see *Central of Ga. R. Co. v. Ga. Ports Auth.*, 190 Ga. App. 518 (379 SE2d 540) (1989); compare *Arthur Pew Constr. Co.*, supra.

[3] Counsel have failed to follow the rules of this court. While nine enumerations are specified, the argument section of the brief is separated into only three sections and the enumerations supposedly argued in each are not identified. See Rule 15; *Wilson v. Cotton States &c. Ins. Co.*, 183 Ga. App. 353, 355 (2) (358 SE2d 874) (1987).

[4] The correct section is 33 USCA § 941.

safe place to work and to protect them from unreasonable risk of harm in the workplace. If you find that Seaco did not provide Mr. Myers [sic] with a reasonably safe place to work or that they exposed him to an unreasonable risk of harm, then you may find that it is negligent. I charge you that a stevedore employer had the primary responsibility for the safety of its employees and it is generally in a good position to prevent accidents as might arise during its work operations."

The objection was that "although the statute [33 USCA § 941 (a)] is relevant to incidents occurring on an ocean vessel, that it's not relevant to incidents occurring in a land based warehouse where the tort principles are governed by State law rather than maritime law."

There is no question that general principles of Georgia tort law were the principles by which the case was governed. This is affirmatively stated in the pretrial order and the court charged on the duty of ordinary care as well as other applicable tort principles. That, however, does not mean that 33 USCA § 941 has no bearing on the case or the evaluation of negligence under general tort principles.

The fact that admiralty jurisdiction is not established, as discussed in *Holland v. Sea-Land Svc.*, 655 F2d 556, 557 (4th Cir. 1981), does not do away with the standard of care toward employees required of those engaged in the longshoreman industry, as SEACO admittedly was. 33 USCA § 902 (4);[5] *Northeast Marine Terminal Co. v. Caputo*, 432 U. S. 249 (97 SC 2348, 53 LE2d 320) (1977). The duty to provide a safe workplace is also included in Georgia's Workers' Compensation system. OCGA § 34-7-20; *Terry Shipbuilding v. Griffian*, 153 Ga. 390, 393 (1) (112 SE 374) (1922); see *Cheeney v. Ocean Steamship Co.*, 92 Ga. 726 (19 SE 33) (1893).

Also, the evidence supported the fact that SEACO recognized this obligation toward its employees. Streeton, the assistant vice president of operations for SEACO, acknowledged that Occupational Health & Safety Administration rules regarding longshoremen applied to the warehouse, and stated that the stevedore has the responsibility for providing employees with a safe place to work.

Therefore, the principle embodied in 33 USCA § 941 was relevant to the action and was properly given.

The other grounds argued in support of this enumeration were not raised below and will not be addressed here.

3. The remaining enumerations, addressed to the denial of the

---

[5] "The term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining . . . terminal, . . . or other adjoining area customarily used by an employer in loading, unloading, . . . a vessel)."

motion for j.n.o.v. or new trial, will be addressed seriatim.[6]

GPA contended that SEACO was negligent in not having properly trained Meyer and in allowing him to engage in unsafe practices, including creating and going into aisles where there was only one way in or out.

At the close of GPA's case, SEACO made its motion for directed verdict, addressed to GPA's claim that SEACO was negligent in letting Meyer create the aisles and go into the stacks to remove the numbers. SEACO contended that the evidence was that Meyer "alone decided to create this aisle" and if that were negligent, it was negligence only of Meyer which would go only to his comparative negligence vis-a-vis GPA. This motion was renewed at the close of all evidence.

(a) After trial, SEACO made its motion for j.n.o.v. or, in the alternative, for new trial.

Paragraph c of the motion for j.n.o.v. contained as a ground that Meyer was the senior SEACO employee on site and admitted at trial that he made the "unilateral decision in selecting the manner with which to discharge rolls." The third enumeration alleges error in denial of the motion because Meyer had "equal or better knowledge than SEACO of any dangerous condition at the site." These, however, were not the grounds presented in the directed verdict motion and will not now be considered. OCGA § 9-11-50 (b); *Glenridge Unit Owners Assn.*, supra at 858 (2).

(b) Enumerations 4, 8 and 9 were not the basis of the motion below and likewise present no ground for review. Id.

(c) Enumerations 5, 6, and 7 allege error in denial of the motion because 1) with regard to the duty to provide a safe workplace, Meyer had direct control of the conditions and methods of the work and was the senior SEACO supervisor on site, 2) with regard to allowing Meyer to conduct work in a particular manner or failing to instruct him in a different manner, the evidence "plainly showed" that Meyer was an experienced supervising stevedore allowed to choose his own method and who had chosen the method that day, and 3) with regard to SEACO's negligently having forced or allowed Meyer to conduct work in a particular way, Meyer, experienced and senior on the job, "knew or had equal means of knowing the alleged negligent nature of the method he used."

The basis of the motion for directed verdict was that the evidence showed that Meyer "alone decided to create this aisle" and if that were negligent, it was negligence only of Meyer which would go

---

[6] To the degree that enumerations 3, 4, and 5 also encompass the giving of various jury charges on the legal premises for the motions, these charges were not objected to on these bases and there is nothing for us to review.

only to his comparative negligence as to GPA.

To the extent that the appeal argues the concept of assumption of the risk by Meyer, that issue was not raised below by SEACO in defense of the third-party claim, no instruction was given to the jury on it, nor was any such instruction requested by SEACO. Had it been raised, it was still a matter for the jury's resolution as to the assumption of risk by an employee. *Thigpen v. Executive Comm.*, 114 Ga. App. 839, 843 (2) (152 SE2d 920) (1966).

As to the claim that it was entitled to directed verdict or j.n.o.v. because the evidence was that Meyer "alone" chose the method which would absolve SEACO of responsibility, the claim also fails. While Meyer did choose the method, that choice was based on the stevedoring training which he received from Streeton. It was admitted by Streeton that the creation of aisles was SEACO's standard practice. While Meyer testified that he felt it was safer to read information from rolls in the stacks, there was conflicting testimony that this was a more dangerous method than the alternate "double handling" method which was more labor intensive and time-consuming.

"A judgment n.o.v. is properly granted only when there can be only one reasonable conclusion as to the proper judgment; if there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is not error to deny the motion. [Cits.]" *Stone v. Cook*, 190 Ga. App. 11, 12 (1) (378 SE2d 142) (1989).

Here, there was evidence supporting the jury's conclusion that SEACO did not maintain an adequate safety program, had not properly advised Meyer concerning the dangers of falling rolls, and had trained him to use the more dangerous procedure for reading information from the rolls. This alone supports the denial of directed verdict and j.n.o.v. and removes it from the realm of cases where the only negligence shown is that of the injured employee. *Proctor & Gamble &c. Co. v. Yeargin Constr. Co.*, 196 Ga. App. 216, 218 (2) (396 SE2d 38) (1990).

4. With regard to the additional contention that it was entitled to a new trial on these same grounds, SEACO is defeated by the principle that "[t]he grant or denial of a motion for new trial . . . is a matter within the sound discretion of the trial court and will not be disturbed . . . if there is 'any evidence' to authorize it." *Associated Software &c. v. Wysocki*, 177 Ga. App. 135, 137 (338 SE2d 679) (1985).

*Judgments affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 21, 1991 —
RECONSIDERATION DENIED DECEMBER 19, 1991 — 

Hunter, Maclean, Exley & Dunn, Robert S. Glenn, Jr., Christopher W. Phillips, for appellant.
Bouhan, Williams & Levy, Edwin D. Robb, Jr., for appellee.