A94A2729, A94A2730. SOUTHEAST ATLANTIC CARGO OPERATORS, INC. v. FIRST STATE INSURANCE COMPANY (two cases).
(456 SE2d 101)

SMITH, Judge.

This case has a history of protracted and piecemeal litigation. Certain facts established in the prior litigation are necessary to understanding the issues involved in this appeal.

Kenneth Meyer, a stevedore foreman working for Southeast Atlantic Cargo Operators, Inc. (SEACO), was injured at a terminal warehouse operated by the Georgia Ports Authority (GPA) in Savannah. Meyer brought suit against GPA, which filed a third-party complaint against SEACO. SEACO had primary insurance coverage under a comprehensive general liability insurance policy issued by Midland Insurance Company with a policy limit of $500,000. It also had coverage under an umbrella policy issued by First State Insurance Company, which provided, except in certain situations not applicable here, up to $10,000,000 in excess liability coverage only above the threshold of $500,000. SEACO turned its defense of the Meyer litigation over to Midland.

Midland was declared insolvent during the pendency of the litigation on the Meyer claim. When Midland was declared insolvent, the Georgia Insurers Insolvency Pool (GIIP) became involved in that litigation, pursuant to the Georgia Insurers Insolvency Pool Act, OCGA § 33-36-1 et seq. However, when GIIP later declined to pay any judgment against SEACO, SEACO took over its own defense in the Meyer

litigation.[1]

SEACO then demanded that its excess insurance carrier, First State, "drop down" and assume primary coverage of SEACO in the Meyer litigation. First State refused to do so, and SEACO brought suit against First State on the issue of whether First State was required to provide such primary coverage. *Southeast Atlantic &c. v. First State Ins. Co.*, 197 Ga. App. 371 (398 SE2d 264) (1990) (*SEACO I*). This court affirmed the trial court's grant of summary judgment to First State in that case, holding that the insolvency of the primary insurer did not require First State to "drop down" and provide first-dollar coverage. Id. at 373.

GPA settled Meyer's claim for approximately $1.3 million, and a trial was then held to determine the relative faults of all parties. See *Ga. Ports Auth. v. Southeast Atlantic &c.*, 202 Ga. App. 318 (414 SE2d 232) (1991) (*SEACO II*). In that trial, GPA was found to be sixty percent negligent, the negligence of SEACO was determined to be thirty-five percent, and the remaining five percent negligence was attributed to Meyer. Id. This court affirmed. Id.

SEACO's liability to GPA for the award to Meyer under the *SEACO I* judgment is $625,332.96. In 1992, SEACO and First State jointly satisfied this liability, with SEACO paying the first $500,000 of the principal amount of the judgment plus $115,065.30 in accrued post-judgment interest. First State paid the remainder of the principal amount of the judgment and $28,640.95 in accrued post-judgment interest. Both payments were made pursuant to an agreement that each party reserved its rights to proceed against the other and to claim reimbursement from the other. No claim was made by either party regarding the payment of the principal.

The present action was brought by SEACO against First State, alleging that First State was obligated to reimburse it for the post-judgment interest paid, because First State was required under the excess liability policy to pay *all* post-judgment interest. First State answered, denying it owed reimbursement to SEACO and counterclaiming for the return of the post-judgment interest it had paid. First State alleged that under the holding in *SEACO I* (the "drop down" litigation) and the terms of the Midland policy, SEACO was required to pay all post-judgment interest. Cross-motions for summary judgment were filed. The trial court granted summary judgment in favor of First State and denied SEACO's motion. In a supplemen-

---

[1] The issue involving whether GIIP was required to contribute to the judgment against SEACO was resolved in favor of SEACO in *Ga. Insurers Insolvency Pool v. Southeast Atlantic &c.*, 211 Ga. App. 660 (440 SE2d 254) (1994) (*SEACO III*). This court held in *SEACO III* that SEACO was entitled to reimbursement from GIIP of the first $100,000 of its liability to GPA. That holding is not involved in this appeal.

tal order, the trial court made clear that summary judgment was granted in favor of First State on both the main claim and the counterclaim. SEACO filed a separate appeal from each order. The issues are identical in both appeals, and they are consolidated for review.

1. The issue presented in these appeals is whether First State is liable for all or any of the post-judgment interest. The trial court found that this issue was controlled by *SEACO I* (the "drop down" litigation). SEACO contends this was error. We do not agree with that contention, and we therefore affirm.

"A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." OCGA § 9-12-40. Contrary to SEACO's contention and that of the dissent, not every precise situation may be covered in the wording of every opinion. The opinion in *SEACO I* makes clear that First State is required to provide coverage under the excess liability policy only beyond the boundaries of the coverage that Midland would have been required to provide under the primary policy. Id. The omission of express and specific mention either in the opinion or during the course of the litigation in *SEACO I* of the issue of liability for post-judgment interest does not mean we are now free to decide the issue in direct contradiction of the holding in that case. Under *SEACO I*, SEACO itself is responsible for all obligations that would have been covered under the Midland policy.

Therefore, resolution of the question of whether First State is responsible for paying any post-judgment interest is dependent entirely on whether, under the terms of its policy, *Midland* was obligated to pay all or part of the post-judgment interest. If Midland was required to do so even if that obligation brought the amount of Midland's coverage over the limits of the primary policy, then SEACO and not First State must bear the entire obligation. If, on the other hand, Midland was obligated under its policy to pay post-judgment interest only on the amount of principal under $500,000, then First State is not entitled to reimbursement of the post-judgment interest it paid on its share of the principal. Finally, if the Midland policy did not require that Midland pay *any* post-judgment interest, then SEACO is not obligated to do so, and the obligation must be borne entirely by First State. The crucial question here, then, is what the Midland policy provides as to this issue.

2. We turn, therefore, to the provisions of the Midland policy. Under the caption "Supplementary Payments," the Midland policy provides that "the company will pay, *in addition to the applicable limit of liability*: . . . all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company *and*

*all interest on the entire amount of any judgment therein* which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon." (Emphasis supplied.)

This is a "standard interest clause." 8A Appleman, Insurance Law & Practice, § 4894.25, p. 80, n. 3. Its language could not be clearer or less ambiguous. Midland was obligated to pay principal only up to its policy limits. However, it was obligated to pay *all* post-judgment interest, even though that obligation brought its liability over the stated policy limits. The modern and prevailing view in jurisdictions across the country is that since the primary insurer controls the litigation, both on appeal and at trial, it is both proper and fair to place upon the primary insurer the burden of all interest accruing during that time. See generally 8A Appleman, supra at § 4894.25, pp. 75-77 and cases cited therein.

We are also persuaded by the reasoning in *Weber v. Biddle*, 483 P2d 155 (Wash. App. 1971), that it is the *intent* of the "standard interest clause" that the insurer will pay interest on the entire amount of the judgment until policy limits are paid or tendered or deposited in court. Evidence of this intent is found in the fact that "[t]he National Bureau of Casualty Underwriters formerly included a different clause in their form of standard policy, but subsequently changed the form to include the clause in issue here. In connection with this change, the bureau stated . . . : 'Several court cases have held that an insurer's obligation to pay interest extends only to that part of the judgment for which the insurer is liable. The respective rating committees have agreed that this is contrary to the intent. As a result, the wording with respect to payment of interest in [certain policies] has been restated, in order that it be entirely clear that all interest on the entire amount of any judgment, which accrues after entry of the judgment, is payable by the insurer until the insurer has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the insurer's liability thereon.' [Cit.]" Id. at 161.

Finally, this also comports with common sense. An insurer may avoid the obligation to pay post-judgment interest on the entire amount of the judgment by paying, or at least tendering, the judgment prior to appeal. That is certainly true where, as here, the insured itself retained its own counsel, was in control of the litigation, and was responsible for making such decisions. First State, as excess liability carrier, did not defend SEACO and had no obligation to do so. It did not make the decisions regarding appeal or payment of the judgment. Consequently, it is fair that SEACO, which did make those decisions (which would have been made by Midland but for its insol-

vency), should be responsible for interest on the entire judgment.

Although this precise issue apparently has never been decided in Georgia, it was assumed to be the rule in *Ins. Co. of Pennsylvania v. Giles*, 196 Ga. App. 271 (395 SE2d 833) (1990). Indeed, in his dissent in *Giles*, Judge Deen cited numerous foreign authorities holding that such clauses obligate an insurer to pay post-judgment interest even over the amount of the policy limits. Id. at 274-275. In *Giles*, however, a majority of this court found the insurer had no liability for post-judgment interest despite this general rule, because it had, in effect, timely tendered an amount toward the judgment equal to its policy limits.

Because responsibility rested with SEACO to pay those portions of the judgment that would have been paid by Midland, and because the Midland policy required it to pay all post-judgment interest, the trial court properly granted summary judgment in favor of First State both on SEACO's claim and on the counterclaim.

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson and Ruffin, JJ., concur. McMurray, P. J., and Blackburn, J., dissent.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent from the judgment affirming summary judgment on behalf of the excess liability carrier, First State Insurance Company, both as to the main claim and the counterclaim. Plaintiff Southeast Atlantic Cargo Operators, Inc. ("Southeast") brought this contract action on an excess-coverage liability insurance policy issued to Southeast by defendant First State Insurance Company ("First State"), alleging that First State "is liable to [Southeast] in the amount of $115,065.30." This dollar amount represents "accrued post[-]judgment interest . . ." which Southeast paid to the Georgia Ports Authority ("the Authority") in its role as the Authority's judgment-debtor. See *Ga. Ports Auth. v. Southeast Atlantic &c.*, 202 Ga. App. 318 (414 SE2d 232). The complaint further alleged that First State was responsible for this sum "due to the insolvency of Midland Insurance Company," Southeast's primary insurer. See *Southeast Atlantic &c. v. First State Ins. Co.*, 197 Ga. App. 371 (398 SE2d 264). First State denied the material allegations and counterclaimed for "the $28,640.95 paid by it for post-judgment interest that accrued on the [Georgia Ports Authority] judgment."

First State subsequently moved for summary judgment both as to Southeast's claim and its own counterclaim against Southeast. Specifically, First State asked for a "declar[ation] that First State has no obligation to pay any post-judgment interest to [Southeast] and . . . a money judgment against [Southeast] for the $28,640.95 in post-judgment interest that it paid to the [Georgia Ports Authority] on

behalf of [Southeast]." In opposition, Southeast filed a cross-motion for summary judgment, arguing that "First State is responsible for all post-judgment interest awarded against [Southeast], [or] in the alternative, [that] First State is responsible for its pro-rata portion of post-judgment interest above the primary carrier's insured limits."

The following chronology is undisputed: In 1983, Southeast purchased a primary comprehensive general liability insurance policy from Midland Insurance Company with "limits of liability of $500,000.00." About the same time, Southeast also purchased from First State an umbrella liability policy, providing up to $10,000,000 in excess liability coverage above the underlying coverage threshold of $500,000. In 1984, during the coverage period of the Midland primary policy, an employee of Southeast was injured on premises owned by the Georgia Ports Authority and leased to Southeast. On April 11, 1986, Midland Insurance Company was declared insolvent. In October 1987, the employee settled his tort action against the Georgia Ports Authority for approximately $1.3 million. In 1990, the Authority obtained a judgment for indemnification against Southeast for $625,332.96. This judgment is based on a jury verdict of proportionate fault among the Georgia Ports Authority (sixty percent at fault), Southeast (thirty-five percent at fault) and the employee (five percent at fault) for the employee's injuries. In 1992, Southeast and First State jointly satisfied the Authority's indemnification judgment. Southeast paid $500,000 of the principal amount of the judgment plus $115,065.30 in post-judgment interest. First State contributed "$153,973.91 which represented [the sum of] the principal amount of the judgment exceeding $500,000.00 ($125,332.96), plus post-judgment interest on that amount calculated from the date of the judgment ($28,640.95)." At the time of this payment, First State's counsel confirmed in writing the mutual understanding of the parties that "this payment by First State and the payments by [Southeast] on the judgment do not constitute a waiver by either of them of any claims that either might have against the other that the other's respective payment should have been greater under the terms of the policy number 00952473 issued by First State to [Southeast]."

The trial court granted First State's motion and denied Southeast's motion, ruling that the case sub judice was controlled by the "drop down" action, i.e., Southeast Atlantic &c. v. First State Ins. Co., 197 Ga. App. 371, supra. The trial court further ordered that Southeast "shall pay all of the post-judgment interest."

1. It is my view that Southeast Atlantic &c. v. First State Ins. Co., 197 Ga. App. 371, supra, the so-called "drop down" action, is not controlling under the circumstances here. The doctrine of res judicata is inapplicable for the simple reason that the insured's liability in indemnification was not fixed until this court's subsequent decision in

*Ga. Ports Auth. v. Southeast Atlantic &c.*, 202 Ga. App. 318, supra.

The prior decision of this court in *Southeast Atlantic &c. v. First State Ins. Co.*, 197 Ga. App. 371, supra, was that First State's excess policy was not ambiguous and did not require it to "drop down" and provide so-called "first dollar" coverage where the named insured's primary insurer had become insolvent. That decision is in the nature of *declaratory judgment*. However, it is not res judicata as to the issue in the cases sub judice, i.e., whether, under the unambiguous terms of that same policy, First State is responsible to its insured for post-judgment interest in any amount, after the limits of retained coverage of any primary liability insurance. This question was not ripe for decision and could not reasonably have been put in issue in the prior litigation even though it arises out of the same general subject matter. "The facts in the two records make, therefore, different cases, and a decision by this [C]ourt, upon one state of facts is not binding upon another. Therefore, [it is my view that,] the trial [court's grant of summary judgment to First State cannot be sustained on the inapplicable ground] of res judicata. *Bass Dry Goods Co. v. Granite City Mfg. Co.*, 116 Ga. 176 (3) (42 SE 415)." *Sammons v. Tingle*, 216 Ga. 814, 815 (3) (120 SE2d 124). See also *Lawson v. Watkins*, 261 Ga. 147, 149 (2) (401 SE2d 719).

2. First State undertook the express contractual duty to "indemnify the INSURED for ULTIMATE NET LOSS, . . . in excess of RETAINED LIMIT, . . . all sums which the INSURED shall be obligated to pay by reason of liability imposed upon the INSURED by law . . . for damages and expenses, because of: . . . PERSONAL INJURY." First State "shall be liable only for the ULTIMATE NET LOSS in excess of . . . the limits of liability indicated . . . in the Schedule A of underlying insurance," i.e., the $500,000 primary coverage which would have been provided pursuant to the Midland policy. Despite this express undertaking, the majority accepts First State's argument that this court's prior ruling that First State has no duty to "drop down" means that the named insured "steps into the shoes of [the insolvent primary insurer,] Midland and any duty that Midland had under the Midland policy now becomes a duty of [Southeast]." First State reasons that Southeast is responsible for all post-judgment interest pursuant to the "standard interest clause"[2] in the Midland policy. As a result, it is argued that "any analysis of First State's duties assumes the continued existence of the Midland policy[.]" In my

---

[2] The section on Supplementary Payments provided: The Company [Midland] will pay, in addition to the applicable limit of liability: . . . all expenses incurred by the company, all costs taxed against the insured . . . and all interest on the entire amount of any judgment. . . ." This is referred to as the "standard interest clause." 8A Appleman, Insurance Law & Practice, § 4894.25, p. 80, n. 3.

view, this position ignores the express undertaking of the excess liability policy, and reforms the policy to the detriment of the insured.

Post-judgment interest on the entire judgment is, as between these two insurers, a joint and several obligation of both the primary and excess liability insurers. See *Hartford Steam Boiler &c. Co. v. Cochran Oil Mill & Ginnery Co.*, 26 Ga. App. 288, 296 (105 SE 856), where this court held that "any proper rule of apportionment must afford to the assured the fullest measure of indemnity under all the policies." "The threshold point at which coverage begins [under the First State umbrella policy] is $500,000. The policy does not obligate [First State] to provide first dollar coverage in the event the underlying insurer is insolvent[.] . . . On the other hand, [First State] is not relieved of its obligation to provide excess coverage because of the insolvency of the underlying insurer." *Lamb Brothers Lumber Co. v. South Carolina Ins. Co.*, 186 Ga. App. 51, 53 (366 SE2d 388). The majority has established the curious proposition that the insolvency of a primary insurer requires the named insured to assume (without consideration) any of the insolvent primary insurer's contractual obligations for the benefit of an excess liability carrier. At most, the named insured is *self*-insured to the *extent* of the underlying or retained *limits* contemplated in the excess liability policy. Compare *Wilkinson v. Vigilant Ins. Co.*, 236 Ga. 456, 457 (2) (224 SE2d 167), where the Georgia Supreme Court held that " 'the liability of the (insurer) is not altered by the discharge of the bankrupt [insured].' " Accordingly, the presence of a "standard interest clause" in a primary policy issued by a now-insolvent insurer should not alter the unambiguous obligation of First State, as the excess liability carrier, to "indemnify the INSURED for . . . all sums which [Southeast] shall be obligated to pay by reason of the liability imposed upon [Southeast] . . . for damages and expenses. . . ." In my judgment, the trial court erred in granting First State's motion for summary judgment on both the main claim by Southeast and on First State's counterclaim to recover the post-judgment interest it had already paid. In the cases sub judice, accrued post-judgment interest on the entire judgment amount falls within the express limits of coverage, i.e., above the $500,000 retained limit and below the $10,000,000 upper limit of excess liability coverage. Moreover, post-judgment interest is a legal item of recoverable damages (OCGA §§ 9-12-10 and 7-4-12), and is included within the meaning of "all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law . . . for damages and expenses, because of . . . PERSONAL INJURY." See, e.g., *Greenwood Cemetery v. Travelers Indem. Co.*, 238 Ga. 313, 317 (232 SE2d 910) ("Punitive damages is a legal liability . . ."). It follows that the trial court also erred in denying Southeast's motion for summary judgment. The judgments of the

trial court should be reversed and remanded with direction to enter judgment for Southeast, in accordance with the insured's motion for summary judgment. OCGA § 9-11-50 (e).

I am authorized to state that Judge Blackburn joins in this dissent.

DECIDED MARCH 17, 1995 — 

*Adams & Ellis, George L. Lewis, Laura J. Tromly*, for appellant. *Lightmas & Delk, Frank A. Lightmas, Jr.*, for appellee.