A06A1877. HOLMES v. CLEAR CHANNEL OUTDOOR, INC.
(644 SE2d 311)

BARNES, Chief Judge.

Fred Holmes sued Clear Channel Outdoor, Inc. for damages related to injuries he sustained when he fell from a broken catwalk on Clear Channel's billboard. The trial court granted Clear Channel's motion for summary judgment, finding that Holmes had waived his right to recover from the company. Upon review of the parties' contract, we conclude that Holmes did not waive his right to recover against Clear Channel for its own negligence under all circumstances, and thus we reverse.

Holmes was an experienced bill-poster who signed an independent contractor agreement with Eller Media, Inc. In September 2001, Holmes prepared to replace the poster on one of two side-by-side billboards owned by Clear Channel, which bought Eller Media in 2001. He set his ladder through the catwalk of the right sign and climbed up, then stepped over onto the catwalk of the left sign where he was going to work. He pulled the ladder up, hooked it over the top post of the left sign, and reached for the lanyard on his safety harness to hook it to the ladder. A weld on a bracket holding the catwalk broke before he could attach the safety line, and Holmes fell 20 feet, landing in a crouching position and breaking his wrist.

Holmes sued Clear Channel for damages, contending that the company breached its duty to keep its premises and approaches safe, that the billboard was negligently constructed and maintained, and that the collapse of the catwalk caused his wrist to break. Clear

Channel answered, denying liability, and then amended its answer to assert the defense of waiver. After the parties conducted discovery, Clear Channel moved for summary judgment, contending that Holmes waived his right to recover against the company for any damages he incurred while he was posting bills, based on the contract he signed with its predecessor.

The trial court granted the motion, holding that the contract barred Holmes's claim for damages against Clear Channel. On appeal, Holmes contends that the trial court erred in granting summary judgment to Clear Channel for three reasons. He contends that he did not contract with Clear Channel, only with Eller Media, and thus any waiver provision in his contract with Eller does not apply. He also asserts that the contract only waived his right to seek indemnification from the company, not his right to recover from it directly for its negligence. Finally, he contends that the waiver is void for violating public policy.

1. Holmes argues that he never signed a contract with Clear Channel, only with Eller Media, and thus he never waived his right to bring an action against Clear Channel. He also points out that the deposition testimony upon which Clear Channel relies to establish that the companies merged was not filed until after the trial court ruled, and thus we cannot consider it. Pretermitting whether we could consider the deposition or not, we must conclude that Holmes admitted in his response to the motion for summary judgment that Clear Channel was the proper party, and that admission is controlling.

In his response, Holmes began by stating, "This Complaint was filed by Fred Holmes ('Holmes') against Clear Channel Outdoors, Inc. ('Clear Channel' *sometimes referred to as a predecessor corporation 'Eller Media'*)." (Emphasis supplied.) On the next page Holmes said, "Before starting work[,] the Defendant's *predecessor Corporation* required him to sign a Document." (Emphasis supplied.) He argues throughout his brief that the Hold Harmless/Indemnification clause of the contract did not indemnify *Clear Channel* against its own negligence.

OCGA § 14-2-1106 (a) (2) provides that, when a merger takes effect, "every contract right possessed by, each corporation or entity party to the merger is vested in the surviving corporation or entity without reversion or impairment, without further act or deed, and without any conveyance, transfer, or assignment having occurred." In essence, Holmes admitted that Eller Media was Clear Channel's predecessor, and cannot now contend otherwise.

Each party has a duty to present his best case on a motion for summary judgment. . . . [I]n responding to a motion for

summary judgment, plaintiffs have a statutory duty to produce whatever viable theory of recovery they might have or run the risk of an adjudication on the merits of their case. The same burden is placed on the parties with regard to factual issues.

(Punctuation and footnotes omitted.) *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 828 (2) (573 SE2d 389) (2002). Therefore we find no merit to this enumeration.

2. We must then consider the contract to determine whether the trial court erred in concluding that Holmes waived his right to seek damages from Clear Channel. In this State,

[t]he construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. (Cit.)

(Citation omitted.) *Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999). The existence or nonexistence of an ambiguity is a question of law for the court. *Southeast Atlantic Cargo Operators v. First State Ins. Co.*, 197 Ga. App. 371, 372 (398 SE2d 264) (1990). If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2. Id.

In this case, Holmes agreed to obtain general commercial liability insurance, workers' compensation coverage, automobile liability insurance for work vehicles, and an umbrella liability policy, naming Eller Media as the certificate holder. The contract included a separate clause entitled "Hold Harmless/Indemnification," and the parties dispute the meaning of the third paragraph in that clause, which provides:

Contractor hereby waives all of its rights for any recovery against Eller, including its employees, agents or tenants, for

any damages incurred by Contractor in providing the services hereunder, provided that such waiver of recovery does not invalidate the insurance coverage.

In the first paragraph of the clause, Holmes agreed to indemnify Eller against all claims asserted against Eller due to real or personal property damage or personal injury related to Holmes's work, "any of contractor's operations pursuant to this Agreement," any act or omission of Holmes's, and any ruling by any agency or court finding Eller liable for payment of taxes because Holmes was an employee. The second paragraph of this clause provided that, if Holmes suffered a loss caused by anyone engaged by or for the benefit of Eller, he would proceed solely against the person causing the loss and not against Eller.

Exculpatory clauses in which a business relieves itself from its own negligence are valid and binding in this State, and are not void as against public policy unless they purport to relieve liability for acts of gross negligence or wilful or wanton conduct. *Neighborhood Assistance Corp. &c. v. Dixon*, 265 Ga. App. 255, 256 (1) (593 SE2d 717) (2004). However, because exculpatory clauses may amount to an accord and satisfaction of future claims and waive substantial rights, they require a meeting of the minds on the subject matter and must be "explicit, prominent, clear and unambiguous." (Citation and punctuation omitted.) *Parkside Center v. Chicagoland Vending*, 250 Ga. App. 607, 611 (2) (552 SE2d 557) (2001).

"Indemnity" has been defined as "the obligation or duty resting on one person to make good any loss or damage another has incurred by acting at his request or for his benefit." [Cit.] This is traditionally a covenant by the indemnitor to indemnify or "save harmless" the indemnitee from claims of third parties. The tendency has been not to sustain an indemnity agreement against the indemnitee's own negligence unless the agreement spells out the indemnitee's obligation in unequivocal terms.

(Citation and punctuation omitted.) *Hall v. Skate Escape*, 171 Ga. App. 178, 180 (319 SE2d 67) (1984). Ambiguities in exculpatory clauses are construed against the drafters. *Altama Delta Corp. v. Howell*, 225 Ga. App. 78, 80 (1) (483 SE2d 127) (1997).

In this case, Clear Channel argues that the third paragraph of the Hold Harmless/Indemnity clause waives Holmes' right to recover for the company's negligence, but the company does not address the language at the end of that paragraph: "provided that such waiver of recovery does not invalidate the insurance coverage." Considering

the entire paragraph, it is clear that Holmes did not waive his right to recover against Clear Channel under any possible scenario. He only waived his rights to recover against Eller for damages *if* the waiver did not invalidate "the insurance coverage." When

> parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party.

(Citations and punctuation omitted.) *Tuxedo Plumbing & Heating Co. v. Lie-Nielsen*, 245 Ga. 27, 28 (1) (262 SE2d 794) (1980). We have also held that a contract provision waiving a defendant's liability "in all of its operations hereunder" does not waive its liability for negligence that is not connected with plaintiff's operations. (Punctuation omitted.) *Rome Builders Supply v. Rome Kraft Co.*, 104 Ga. App. 488, 489 (3) (122 SE2d 133) (1961).

Reading the third paragraph in context with the preceding paragraphs, title to the section, and the requirement for liability insurance, the contract only waives Clear Channel's liability if the waiver does not invalidate Holmes's insurance. Because the trial court did not consider whether the waiver invalidated Holmes's insurance, we reverse.

3. In view of our disposition of the case on the grounds stated in Division 2, Holmes's third enumeration is moot.

*Judgment reversed. Johnson, P. J., Blackburn, P. J., Ellington, Miller and Bernes, JJ., concur. Andrews, P. J., dissents.*

ANDREWS, Presiding Judge, dissenting.

I agree with the majority's conclusion in Division 1 that when the injured contractor Holmes admitted that Clear Channel was a proper party, he also admitted that Clear Channel obtained whatever rights its subsidiary Eller had bargained for in its agreement with Holmes. I part ways with the majority as to Division 2, however, concerning Holmes's contractual waiver of "any recovery" for damages "incurred by [Holmes] in providing the services hereunder, provided that such waiver of recovery does not invalidate the insurance coverage." Under the facts of this case, the latter provision does not implicate either Holmes's waiver of claims against Clear Channel or his responsibility to provide insurance policies for the benefit of both parties to the contract. I therefore dissent.

The first paragraph of the provision at issue here provided that Holmes would indemnify Eller against all claims related to Holmes's

work, including "any of Contractor's operations pursuant to this Agreement," any act or omission of Holmes's, and any ruling finding Eller liable for payment of taxes arising from Holmes's employment. The second paragraph provides that if Holmes suffered a loss caused by someone working for Eller, Holmes would proceed only against that person, and not against Eller. And the third paragraph, quoted in full by the majority, provides that Holmes waives "all" of his rights for "any recovery against Eller . . . for any damages incurred by [Holmes] in providing the services hereunder, *provided that such waiver of recovery does not invalidate the insurance coverage.*" (Emphasis supplied.) The "insurance coverage" in this last paragraph was the subject of an earlier provision that Holmes would obtain four kinds of insurance: general commercial liability, workers' compensation insurance, work vehicle automobile liability, and umbrella liability. Holmes in fact obtained all this coverage, naming Eller as an additional insured and as the certificate holder.

The majority holds that Holmes "only waived his rights to recover against Eller for damages *if* the waiver did not invalidate 'the insurance coverage' " and reverses the grant of summary judgment so that the trial court may consider "whether the waiver invalidated Holmes's insurance." This is unnecessary as a matter of law, with the consequence that the majority's reversal of summary judgment is erroneous.

The parties to this contract added the language at issue to protect their insurance coverage from any possible effects of Holmes's waiver on that coverage. If a stranger to the contract alleged a claim against one of the parties to it, for example, it is conceivable that the insurer covering that claim might obtain a subrogated claim against the other party. The Supreme Court of Georgia has held, however, that exculpatory clauses, and insurance arrangements made in furtherance of them, do not violate any public policy, and that a promisor who agrees to obtain insurance cannot pursue the promisee for liability contemplated by that agreement. See *Tuxedo Plumbing & Heating Co. v. Lie-Nielsen*, 245 Ga. 27, 29 (1) (262 SE2d 794) (1980). Holmes pleads only negligence in his complaint, moreover, which takes this case beyond the reach of those involving wilful or wanton acts. See, e.g., *McFann v. Sky Warriors, Inc.*, 268 Ga. App. 750 (603 SE2d 7) (2004) (where question of fact existed concerning a party's gross negligence, exculpatory agreement could be unenforceable as against public policy).

We are bound to read contracts so as to "give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect." (Citations and punctuation omitted.) *Whitmire v. Colwell*, 159 Ga. App. 682, 683 (285 SE2d 28)

(1981). When the majority uses a contract provision not implicated under the facts before it to invalidate a second, inarguably relevant provision, it violates this precept of contract interpretation. See *Tuxedo Plumbing*, supra (the only reasonable construction of promises to exculpate and to provide insurance was that promisee would also obtain the benefit of insurance procured by promisor). I therefore dissent.

DECIDED MARCH 23, 2007.

*Roane & Roane, Matthew H. Roane, Clark & Goldner, C. Lawrence Jewett, Jr.*, for appellant.
*Jean F. Johnson*, for appellee.