**ALLSTATE INSURANCE COMPANY, as subrogee of its insureds, Chris Kernion and Jill Kernion, Plaintiff,**

v.

**ADT, LLC, formerly known as Brinks Home Security, Inc. and/or Broadview Home Security, Inc., Defendant.**

1:15-cv-517-WSD

United States District Court, N.D. Georgia, Atlanta Division.

Signed 06/30/2016

Filed 07/01/2016

Jeffrey F. Leasendale, Nathan T. Dillard, Law Office of Moore & Associates, Atlanta, GA, for Plaintiff.

John Gregory Godsey, The Godsey Firm, LLC, Norcross, GA, for Defendant.

## OPINION AND ORDER

WILLIAM S. DUFFEY, JR., UNITED STATES DISTRICT JUDGE

This matter is before the Court on Defendant ADT, LLC's ("Defendant")[1] Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim [9] ("Second Motion to Dismiss").

### I. BACKGROUND

#### A. Facts

Plaintiff Allstate Insurance Company ("Plaintiff") issued to Chris and Jill Kernion (the "Kernions") an insurance policy (the "Policy") covering their Cobb County

---

1. The Amended Complaint for Damages [8] states that Defendant formerly was known as Brinks Home Security, Inc. and/or Broadview Home Security, Inc. ([8] ¶ 2).

home (the "Property"). (Am. Compl. ¶ 7). On March 18, 2009, Defendant and the Kernions entered into a Protective Service Agreement ("Contract") in which Defendant agreed to install and maintain, in the Property, certain protective equipment, including a water sensor known as a "water bug." (Id. ¶ 9; id., Ex. A). Section 7(e) of the Contract provides:

> YOU UNDERSTAND AND AGREE THAT [DEFENDANT'S] LIABILITY TO YOU AND ALL OTHER PERSONS IS LIMITED TO A TOTAL RECOVERY OF NOT MORE THAN THE TOTAL AMOUNT OF FEES ACTUALLY PAID TO [DEFENDANT] UNDER SECTION 2(B) OF THIS AGREEMENT DURING THE TWELVE-MONTH PERIOD PRECEDING THE EVENT OR OMISSION FOR WHICH YOU AND ALL OTHER PERSONS MAY MAKE A CLAIM AGAINST [DEFENDANT]. YOU ACCEPT RESPONSIBILITY FOR ANY LIABILITY BEYOND THESE LIMITS AND YOU WILL MAINTAIN YOUR OWN INSURANCE COVERAGE AS YOU DESIRE TO PROTECT YOU AND OTHERS FROM ANY LOSSES EXCEEDING THESE LIMITS. YOU WILL ENSURE THAT EACH SUCH POLICY CONTAINS A PROVISION OR ENDORSEMENT WAIVING ANY AND ALL SUBROGATION RIGHTS AGAINST [DEFENDANT]. YOU WILL LOOK SOLELY TO THE PROCEEDS OF SUCH INSURANCE FOR ANY LOSS, LIABILITY, DAMAGE OR CLAIM ABOVE THE LIMITS OF [DEFENDANT'S] LIABILITY TO WHICH YOU AGREE IN THIS SECTION 7.

(Id., Ex. A § 7(e)).

The Contract also contains a clause exempting Defendant from liability "FOR LOSS OR DAMAGE DUE DIRECTLY OR INDIRECTLY TO ANY OCCURRENCE OR CONSEQUENCES THEREFROM, WHICH THE SERVICE IS DESIGNED TO DETECT OR AVERT." (Id., Ex. A § 7(b)).

Plaintiff alleges that Defendant "fail[ed] to install the water bug with the correct wire connects." (Id. ¶ 20). As a result, on January 8, 2014, while the Kernions were out of town, the Property's pipes burst, sending thousands of gallons of water throughout the Property. (Id. ¶¶ 8, 10). Because the water bug was installed incorrectly, it did not send an alarm that a water breach had occurred. (Id. ¶ 10). The Property suffered extensive damage. (Id. ¶ 8).

The Kernions filed a claim under the Policy. After the Kernions paid a $3,000 deductible, Plaintiff paid them $110,190.27 for the water damage they suffered. (Id. ¶¶ 11-12). Plaintiff asserts a subrogation claim against Defendant to recover the $113,190.27 in damages caused by the flooding. (Id. ¶ 13).

### B. Procedural History

On December 22, 2014, Plaintiff filed its Complaint [1.1] in the State Court of Cobb County, Georgia, seeking damages caused by Defendant's improper installation of the water bug device. On February 20, 2015, Defendant removed the action to this Court on the basis of diversity of jurisdiction. ( [1] ). On February 27, 2015, Defendant filed its Motion to Dismiss for Failure to State a Claim [2] ("First Motion to Dismiss"), arguing that Plaintiff failed to identify a cognizable cause of action. Defendant argued that Plaintiff's presumed breach of contract and negligence claims were not viable because the Contract

waives Plaintiff's subrogation rights against Defendant, exempts Defendant from liability, and limits Plaintiff's recoverable damages (collectively, "Defense Clauses"). Defendant also argued that Plaintiff failed to state a claim for breach of contract because the Complaint did not identify the Contract provision that Defendant allegedly violated. Defendant argued further that its failure to properly install the water bug was an alleged breach of the Contract and a claim based on negligence could not be asserted.

On March 12, 2015, Plaintiff filed its Response in Opposition to ADT LLC's Motion to Dismiss for Failure to State a Claim [4] ("First Response"). In it, Plaintiff identified the Contract provision that Defendant allegedly violated, argued that Defendant was grossly negligent, and argued that the Defense Clauses are unenforceable because they are not displayed prominently in the Contract. On March 26, 2015, Defendant filed its Reply in Support of its Motion to Dismiss for Failure to State a Claim [5] ("First Reply"), arguing that the Defense Clauses are valid because they "contain the requisite indicia of prominence." (First Reply at 3, 6). Defendant argued that "Georgia courts enforce prominent exculpatory provisions" and, "[f]or this reason, the Court should enforce the limitation of liability and subrogation provisions that were meaningfully set off in the [Contract]." (Id. at 11). Defendant did not argue that the subrogation waiver's validity is determined differently than the validity of the exculpatory and limitation-of-liability clauses.

On September 30, 2015, the Court issued its Opinion and Order [7] ("2015 Order"), dismissing Plaintiff's breach of contract claim for failure to identify the provision violated, and finding that Plaintiff did not "intend[ ] to assert a negligence claim in its Complaint." (2015 Order at 17 n.9). The Court also determined that the Defense Clauses are unenforceable, under Georgia law, because they are not "prominent, explicit, clear, and unambiguous." (Id. at 14). The Court granted Plaintiff leave to file an amended complaint to identify the Contract provision that Defendant allegedly violated.

On October 19, 2015, Plaintiff filed its Amended Complaint for Damages [8] ("Amended Complaint"), asserting a claim for breach of contract and a new claim for gross negligence. On November 2, 2015, Defendant filed its Second Motion to Dismiss, arguing that the Contract's subrogation waiver is valid because it is not an exculpatory clause and was not required to be displayed prominently in the Contract. Defendant acknowledges that neither party raised this issue previously. ( [11] at 2). Defendant also argues that Plaintiff fails to state a claim for gross negligence because Defendant's alleged failure to install the water bug properly was based on an obligation that arose solely from the Contract.

On November 16, 2015, Plaintiff filed its Response in Opposition to ADT LLC's Motion to Dismiss Amended Complaint for Failure to State a Claim [10] ("Second Response"), arguing that the Contract's subrogation waiver is invalid because, as the Court found previously, it is not displayed prominently in the Contract. Plaintiff also argues that subrogation waivers do not bar claims for gross negligence. On November 30, 2015, Defendant filed its Reply in Support of its Motion to Dismiss Plaintiff's Amended Complaint [11] ("Second Reply").

## II. DISCUSSION

### A. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Pro-

cedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[ ] the benefit of reasonable factual inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir.2010). Although reasonable inferences are made in the plaintiff's favor, " 'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir.2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n. 10 (11th Cir.1996)). The Court is not required to accept as true conclusory allegations or legal conclusions. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir.2010) (construing Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); see Jackson v. Bell-South Telecomms., 372 F.3d 1250, 1263 (11th Cir.2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." (quoting Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir.2002) (internal quotation marks omitted))).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Mere "labels and conclusions" are insufficient. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556

U.S. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This requires more than the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679, 129 S.Ct. 1937). The well-pled allegations must "nudge[ ] [plaintiff's] claims across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

### B. Analysis

#### 1. Plaintiff's Breach of Contract Claim

Section 1(c) of the Contract provides that Defendant "will install and make operational" certain protective equipment, including a water bug, at the Kernions' Property. (Am. Compl. ¶¶ 16-17; id. Ex. A § 1(c)). Plaintiff asserts a subrogation claim for breach of contract on the ground that Defendant failed to "install and make operational" the water bug. By asserting a violation of a specific Contract provision, Plaintiff adequately addresses the pleading deficiency identified in the Court's 2015 Order. Defendant now moves to dismiss Plaintiff's claims on the basis of the Contract's subrogation waiver.

Subrogation allows an insurer to " 'step into the shoes' of the insured and assert any cause of action against a third party that the insured could have asserted for his or her own benefit had the insured not been compensated by the insurer." Arrow Exterminators, Inc. v. Zurich Am. Ins. Co., 136 F.Supp.2d 1340, 1352 (N.D.Ga. 2001); see Am. Motorist Ins. Co. v. Morris Goldman Real Estate Corp., 277 F.Supp.2d 304, 307 (S.D.N.Y.2003) ("Subrogation, an equitable doctrine, allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which

the insurer is bound to reimburse." (quoting Kaf–Kaf, Inc. v. Rodless Decorations, Inc., 90 N.Y.2d 654, 665 N.Y.S.2d 47, 687 N.E.2d 1330 (1997) (internal quotation marks omitted))). "A subrogee 'stands in the shoes' of the subrogor and 'assumes only those claims that the subrogor has, subject to any defenses that could be asserted against the subrogor.'" Arrow Exterminators, 136 F.Supp.2d at 1354 (quoting Parks v. State Farm Gen. Ins. Co., 238 Ga.App. 814, 520 S.E.2d 494, 496 (1999)); see Curles v. U.S. Fid. & Guar. Co., 198 Ga.App. 857, 403 S.E.2d 458, 459 (1991) ("[S]ubrogation of an insurer is an equitable right which is derived from the rights of the insured and is limited to those rights.").

■ In Georgia, parties can waive an insurer's subrogation rights by "agree[ing] to look solely to insurance to cover their losses." Colonial Properties Realty Ltd. P'ship v. Lowder Const. Co., 256 Ga.App. 106, 567 S.E.2d 389, 393 (2002) (quoting Glazer v. Crescent Wallcoverings, Inc., 215 Ga.App. 492, 451 S.E.2d 509, 511 (1994)); see id. at 394 ("Waiver of subrogation clauses are intended to allow[ ] the parties to exculpate each other from personal liability in the event of property loss or damage to the work to the extent each party is covered by insurance." (quoting Behr v. Hook, 173 Vt. 122, 787 A.2d 499, 503 (2001) (internal quotation marks omitted))); 16 Ga. Jur. Insurance § 25:8 ("In a waiver of subrogation clause, the contracting parties agree to look solely to insurance to cover their losses.").

In Section 7(e) of the Contract, the Kernions agreed:

...YOU WILL MAINTAIN YOUR OWN INSURANCE COVERAGE AS YOU DESIRE TO PROTECT YOU AND OTHERS FROM ANY LOSSES EXCEEDING THESE LIMITS. YOU WILL ENSURE THAT EACH SUCH POLICY CONTAINS A PROVISION OR ENDORSEMENT WAIVING ANY AND ALL SUBROGATION RIGHTS AGAINST [DEFENDANT]. YOU WILL LOOK SOLELY TO THE PROCEEDS OF SUCH INSURANCE FOR ANY LOSS, LIABILITY, DAMAGE OR CLAIM ABOVE THE LIMITS OF [DEFENDANT'S] LIABILITY TO WHICH YOU AGREE IN THIS SECTION 7.

(Am. Compl., Ex. A § 7(e)).

■ The parties agree that this constitutes a subrogation waiver but dispute whether it is an "exculpatory clause" that, to be enforceable, must be displayed prominently in the Contract. In Georgia, "because exculpatory clauses may amount to 'an accord and satisfaction of future claims and waive substantial rights, they require a meeting of the minds on the subject matter and must be explicit, prominent, clear and unambiguous'" ("Prominence Test"). Monitronics Int'l, Inc. v. Veasley, 323 Ga.App. 126, 746 S.E.2d 793, 802 (2013) (quoting Holmes v. Clear Channel Outdoor, Inc., 284 Ga.App. 474, 644 S.E.2d 311, 314 (2007)). If the Contract's subrogation waiver is an exculpatory clause, within the meaning of Veasley, its validity likely depends on its prominence.

Plaintiff does not cite, and the Court cannot find, any Georgia case (1) applying the Prominence Test to a subrogation waiver, (2) stating that subrogation waivers are valid only if they pass the Prominence Test, or (3) stating clearly that subrogation waivers are "exculpatory clauses" within the meaning of Veasley, 746 S.E.2d

at 802.[2] On the contrary, Georgia courts regularly enforce subrogation waivers because, by "shift[ing] the risk of loss to [a party's] insurer," they do not violate Georgia public policy. Colonial Properties, 567 S.E.2d at 393 ("Where the parties to a commercial construction project agree to shift the risk of loss to the owner's insurer even after the project is completed, an injury to the public interest does not clearly appear. The subrogation clause at issue does not violate O.C.G.A. § 13–8–2(b) or any other public policy of this state.").[3]

In Tuxedo Plumbing, a property owner hired a plumbing contractor to install water lines inside his apartment complex and the contractor's negligence caused fire damage to the apartments. Tuxedo Plumbing & Heating Co. v. Lie–Nielsen, 245 Ga. 27, 262 S.E.2d 794 (1980). The parties' contract stated that "Owner shall be responsible for procuring and maintaining fire insurance with extended coverage upon the structures and improvements of the Property in such amount(s) as determined solely by Owner." Id. at 795. Without applying or mentioning a Prominence Test, the Georgia Supreme Court held that this was a valid, enforceable subrogation waiver. The court stated:

[W]here parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party.

Id. (quoting General Cigar Co. v. Lancaster Leaf Tobacco Co., 323 F.Supp. 931, 941 (D.Md.1971) (internal quotation marks omitted)). The court concluded that the owner "cannot recover from [the contractor] for liability he had agreed to cover with insurance, and the insurance company ... cannot have rights superior to" the owner. Id. The "insurance company, having paid the owner for his fire losses, [was] not entitled to sue the contractor for recovery of the sums paid." Id.

This approach is consistent with Georgia's respect for "parties' sacrosanct freedom of contract" and the state's policy of enforcing contracts "except where the case is free from doubt and where an injury to the public interest clearly appears." Veasley, 746 S.E.2d at 802; see Duncan v. In-

---

**2.** Plaintiff quotes the following passages: (1) "Waiver of subrogation clauses are intended to allow[ ] the parties to exculpate each other from personal liability in the event of property loss or damage to the work to the extent each party is covered by insurance," Colonial Properties, 567 S.E.2d at 393 (quoting Behr v. Hook, 173 Vt. 122, 787 A.2d 499, 503 (2001) (internal quotation marks omitted)), and (2) "[The contract] contained the following exculpatory language, commonly referred to as a 'waiver of subrogation clause,' " Midtown Glass Co., LLC v. Levent Indus., Inc., 316 Ga.App. 422, 729 S.E.2d 556, 557 (2012). (Second Response at 3–4). These cursory excerpts do not show that subrogation waivers qualify as "exculpatory clauses," within the meaning of Veasley, or that they must satisfy the Prominence Test. 746 S.E.2d at 802.

**3.** Georgia appears to enforce subrogation waivers that are not obviously "explicit, prominent, clear and unambiguous." See, e.g., May Dep't Store v. Ctr. Developers, Inc., 266 Ga. 806, 471 S.E.2d 194, 197 (1996) (finding that a contract waived subrogation rights despite "the absence of an express requirement to maintain insurance"); Glazer v. Crescent Wallcoverings, Inc., 215 Ga.App. 492, 451 S.E.2d 509, 511 (1994) (Georgia courts have "inferred an intent to look solely to insurance from the inclusion of mandatory insurance provisions, regardless of whether the indemnification clauses in question mentioned insurance").

tegon General Ins. Corp., 267 Ga. 646, 482 S.E.2d 325, 328 (1997) ("Georgia has historically afforded great protection to the freedom to contract with another person."); Colonial Properties, 567 S.E.2d at 393 ("[C]ourts must exercise extreme caution in declaring a contract void as against public policy and should do so only in cases free from doubt." (quoting Emory Univ. v. Porubiansky, 248 Ga. 391, 282 S.E.2d 903, 904–05 (1981))).

Courts outside of Georgia also distinguish subrogation waivers from exculpatory clauses, and enforce them without applying a Prominence Test. See Best Friends Pet Care, Inc. v. Design Learned, Inc., No. 06–cv–0169755, 2002 WL 1949202, at *2 (Conn.Super.Ct. July 22, 2002) ("Authority from other jurisdictions unanimously is of the view that a waiver of the subrogation clause is not an exculpatory provision."). For example, in Acadia Ins. Co. v. Buck Const. Co., 756 A.2d 515 (Me. 2000), the Supreme Judicial Court of Maine rejected an insurer's argument that waivers of subrogation must be "clear and unequivocal." Id. at 520. The court held that, "[w]hile public policy does not favor agreements by one party to indemnify another party for its own negligence, allocation of risk to insurers through waivers of subrogation are encouraged by the law and serve important social goals: encouraging parties to anticipate risks and to procure insurance covering those risks, thereby avoiding future litigation, and facilitating and preserving economic relations and activity." Id. (internal citations omitted).

█ Subrogation waivers also do not implicate the same policy concerns as exculpatory clauses and thus require less

scrutiny. "Unlike exculpatory clauses which preclude an insured party (the victim) from obtaining compensation for the harm suffered, a subrogation waiver provision nevertheless insures that the injured party is compensated." Great N. Ins. Co. v. Architectural Environments, Inc., 514 F.Supp.2d 139, 143 (D.Mass.2007); see Travelers Indem. Co. v. Crown Corr Inc., 589 Fed.Appx. 828, 833 (9th Cir.2014) (although "exculpatory clauses" are "disfavored and construed strictly," "subrogation waivers are different from traditional exculpatory clauses" and "do not present the same dangers ... because no risk exists that the injured party will be left without compensation, and subrogation waivers serve important policy goals"); Chadwick v. CSI, Ltd., 137 N.H. 515, 629 A.2d 820, 825-26 (1993) ("[Subrogation waivers] do not present the same concerns as naked exculpatory provisions. . . . [They] are not designed to unilaterally relieve one party from the effects of its future negligence, thereby foreclosing another party's avenue of recovery."); see also In re Johnson, No. 04–cv–0128, 2006 WL 126613, at *3 (S.D.Ala. Jan. 17, 2006) ("[W]hile a true exculpatory clause precludes the defendant's liability for its own negligence, a waiver-of-subrogation clause leaves the defendant's potential liability intact but reduces its exposure to those losses not covered by the plaintiff's insurance.").

█ The Court finds that the Contract's subrogation waiver is not an exculpatory clause that, under Georgia law, must satisfy the Prominence Test. To recover damages exceeding the amount specified in Section 7(e) of the Contract,[4] the Kernions "agreed to look solely to the insurance to

---

4. Defendant stated previously that this amount was $359.40. (First Motion to Dismiss at 5).

be procured and maintained by [them]." Island Villa Developers, Inc. v. Bonner Roofing & Sheet Metal Co., 175 Ga.App. 713, 334 S.E.2d 41, 42 (1985). The Kernions "cannot recover from [Defendant] for liability [they] agreed to cover with insurance." Tuxedo Plumbing, 262 S.E.2d at 795. Because Plaintiff, as subrogee, "cannot have rights superior to" the Kernions, Plaintiff's recovery for breach of contract is limited to the agreement reached in the Contract. Id. Plaintiff asserts a plausible breach of contract claim for damages as limited by the Contract.[5]

### 2. Plaintiff's Gross Negligence Claim

■ Section 1(c) of the Contract provides that Defendant "will install and make operational" certain protective equipment, including a water bug, at the Kernions' Property. (Am. Compl. ¶¶ 16-17; id. Ex. A § 1(c)). Plaintiff asserts a claim for gross negligence on the ground that Defendant failed to properly "install and make operational" the water bug. Plaintiff alleges that "[i]n failing to correctly connect the wires to enable the water bug, Defendant failed to exercise the slight diligence that could and should have been exercised." (Id. ¶ 27).

■ "[A] breach of contract claimant may only bring a tort claim where, in addition to breaching the contract, the defendant also breached a duty imposed by law." Fay v. Custom One Homes, LLC, 276 Ga.App. 188, 622 S.E.2d 870, 874 (2005); see Fielbon Dev. Co., LLC v. Colony Bank of Houston Cty., 290 Ga.App. 847, 660 S.E.2d 801, 808 (2008) ("[A] defen-

dant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law." (quoting S & A Indus., Inc. v. Bank Atlanta, 247 Ga.App. 377, 543 S.E.2d 743, 748 (2000) (internal quotation marks omitted))); id. ("[A]bsent a legal duty beyond the contract, no action in tort may lie upon an alleged breach of a contractual duty." (quoting Wallace v. State Farm Fire &c. Co., 247 Ga.App. 95, 539 S.E.2d 509, 512 (2000) (internal quotation marks omitted))); Swyters v. Motorola Employees Credit Union, 244 Ga.App. 356, 535 S.E.2d 508, 510 (2000) ("If no liability is claimed except that arising out of a breach of the express terms of a contract, the action lies in contract alone; an action in tort will not lie"); see also In re Colony Square Co., 843 F.2d 479, 482 (11th Cir. 1988) ("Tort relief is available in a breach of contract setting only in a narrow range of circumstances.").

Thus, "Plaintiff cannot assert a claim for gross negligence based solely on Defendant['s] alleged breach of [its] obligations under the [Contract]. Instead, its claim for gross negligence must be based on an alleged breach of some independent duty created by statute or common law." Integrated Pest Mgmt. Servs., LLC v. BellSouth Advert. & Pub. Corp., No. 1:04-cv-2880, 2005 WL 3096131, at *4 (N.D.Ga. Nov. 16, 2005) (internal citation omitted); see Doty Commc'ns, Inc. v. L.M. Berry & Co., 417 F.Supp.2d 1355, 1358 (N.D.Ga. 2006), as corrected (Feb. 13, 2006) ("The plaintiffs cannot assert a claim for gross

---

5. It appears that the Contract's subrogation waiver does not specifically bar or limit Plaintiff's gross negligence claim. See Colonial Properties, 567 S.E.2d at 394 ("[Plaintiff] argues that the subrogation clause cannot excul-

pate [defendant] for acts of gross negligence. That is correct.... [Subrogation waivers] do not relieve a party from liability for acts of gross negligence or wilful or wanton conduct.").

negligence against the defendants based solely on the defendants' breach of their obligations under the [contract]."); see also A.L. Williams & Associates v. Faircloth, 259 Ga. 767, 386 S.E.2d 151, 154 (1989) ("Any breach of contract must arise from the contract, and does not give rise to an action for tort, whether or not such breach was negligent or wilful." (quoting Hudson v. Venture Industries, 147 Ga.App. 31, 248 S.E.2d 9, 11 (1978) (internal quotation marks omitted))).

Plaintiff quotes the general standard for gross negligence [6] but does not identify any non-contractual legal duty that Defendant violated by incorrectly installing the water bug. Accordingly, Plaintiff's claim for gross negligence must be dismissed. See Sanders v. U.S. Bank Nat. Ass'n, No. 1:13–cv–3192, 2013 WL 6086157, at *3 (N.D.Ga. Nov. 19, 2013) ("Plaintiff fails to allege that Defendants breached any duty owed to her independent of Plaintiff's loan documents and her claims for negligence and gross negligence are dismissed."); Doty Commc'ns, 417 F.Supp.2d at 1358 ("[T]he plaintiffs have not identified any independent duty created by statute or common law that the defendants breached. Accordingly, summary judgment on the plaintiffs' gross negligence claim is warranted."); Bulmer v. S. Bell Tel. & Tel. Co., 170 Ga.App. 659, 317 S.E.2d 893, 895 (1984) ("Since appellant has alleged no special relationship between herself and appellee establishing a possible duty breach of which would constitute as tort; and has presented no statutory or common law authority establishing such a duty imposed by law arising out of an alleged contract or otherwise, nor do we find any,

we affirm the trial court's dismissal of the counts in tort.").

**III. CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant ADT, LLC's Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim [9] is **GRANTED IN PART** and **DENIED IN PART**. Defendant ADT, LLC's motion to dismiss Plaintiff Allstate Insurance Company's claim for gross negligence is **GRANTED**. Defendant ADT, LLC's motion to dismiss Plaintiff Allstate Insurance Company's claim for breach of contract is **DENIED**.

**SO ORDERED** this 30th day of June, 2016.

---

**6.** Plaintiff quotes O.C.G.A. § 51–1–4, which provides:

In general, slight diligence is that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances.

As applied to the preservation of property, the term 'slight diligence' means that care which every man of common sense, however inattentive he may be, takes of his own property. The absence of such care is termed gross negligence.