**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 13, 2019**

# In the Court of Appeals of Georgia

A18A2117. WARREN AVERETT, LLC v. LANDCASTLE
    ACQUISITION CORPORATION.

REESE, Judge.

The Appellant, Warren Averett, LLC, an accounting firm, appeals from the grant of partial summary judgment to the Appellee, Landcastle Acquisition Corporation. According to the Appellant, the trial court erred in finding, as a matter of law, that a contract provision limiting the amount of damages the Appellee could recover was unenforceable. For the reasons set forth, infra, we affirm.

Viewed in the light most favorable to the Appellant,[1] the record shows the following facts. From 2010 through 2014, Morris Hardwick Schneider, P.C., ("MHS") was a large, multi-state law firm that conducted real estate closings and

---

[1] See *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

other mortgage-related services. As a result of the nature and size of its business, MHS had "billions of dollars flowing in and out of its [title] escrow accounts[,]" as well as "millions of dollars flowing in and out" of its trust accounts, during that time period.

In December 2012, the managing partner of MHS,[2] Nathan E. Hardwick, IV, hired the accounting firm of Gifford Hillegass & Ingwersen, LLP, ("GH&I") to conduct an audit for the prior three years. GH&I drafted an engagement letter that memorialized the scope of the audit and the terms of its contract ("2012 Contract") and sent it to MHS. According to the 2012 Contract, GH&I was going to "audit the consolidated balance sheets of [MHS] as of January 1, 2010, December 31, 2010, 2011[,] and 2012 and the related consolidated statements of income, comprehensive income, members' equity, and cash flow for the years then ended." The objective of the audit was to enable GH&I to express "an opinion about whether [MHS's] financial statements [were] fairly presented, in all material respects, in conformity

[2] Although the Appellee emphasizes that MSH was a subsidiary of a holding company, MHSLaw, P.C. (later MHSLaw, Inc.), and that it was the holding company, not MHS, that arranged for the audits, the distinction does not affect this Court's analysis in the instant appeals. Thus, for the sake of simplicity and clarity, we will address the audits as if MHS had initiated them and an officer signed the applicable contracts on behalf of MHS.

with U. S. generally accepted accounting principles."[3] Hardwick signed the 2012 Contract and returned it to GH&I.

Shortly thereafter, the Appellant, an accounting firm, acquired GH&I, effective January 1, 2013, and the Appellant took over the performance of MHS's audit. The Appellant sent a letter to MHS notifying the law firm of the acquisition and asking that a corporate official confirm that the ongoing audit would still be subject to the 2012 Contract. On February 4, 2013, a partner of MHS signed the letter and returned it to the Appellant.

---

[3] In the 2012 Contract, GH&I agreed to
perform the audits to obtain reasonable assurance about whether the financial statements [were] free of material misstatement[s], whether from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violations of laws or governmental regulations that [were] attributable to the entity or to acts by management or employees acting on behalf of the entity. [W]e will inform [MHS] of any material errors that come to our attention, and we will inform [MHS] of any fraudulent financial reporting or misappropriation of assets that comes to our attention. We will also inform [MHS] of any violations of laws or governmental regulations that come to our attention, unless clearly inconsequential. . . . Our audits will include obtaining an understanding of the entity and its environment, including internal control, sufficient to assess the risks of material misstatement of the financial statements[.]

3

In October 2013, Hardwick hired the Appellant to conduct an audit of MHS's[4] financial statements for the year ending on December 31, 2013. The Appellant memorialized the terms of the audit in a second engagement letter ("2013 Contract"), which contained essentially the same terms as the 2012 Contract. Hardwick signed the contract and returned it to the Appellant.

In the meantime, in early 2013, the Appellant issued to MHS Independent Auditors' Reports for 2010/2011 and 2011/2012. The Appellant subsequently issued its Independent Auditors' Report for 2012/2013 on April 18, 2014. Each of the reports stated that it "present[ed] fairly . . . the assets, liabilities, and stockholders' deficit of [MHS]" for the applicable years, as well as the revenues, expenses, and cash flows for those years. However, none of the audit reports addressed or even acknowledged the assets, liabilities, or cash flows for MHS's trust or title escrow accounts.

In the summer of 2014, MHS discovered that Hardwick, MHS's managing partner, had embezzled at least $20 million from MHS's trust and title escrow

[4] At some point after December 2012, Morris Hardwick Schneider, P.C., changed its corporate form and became Morris Hardwick Schneider, LLC. The firm subsequently changed its name to Morris Schneider Wittstadt, LLC. Because these changes are not relevant to the issues on appeal, and to avoid confusion, we will refer to the law firm as "MHS" throughout this opinion.

accounts.[5] And, according to the Appellee, Hardwick embezzled at least $11 million of that total after the Appellant had issued its 2010/2011 Independent Auditors' Report on January 11, 2013.

In January 2017, the Appellee[6] filed suit against the Appellant for breach of contract, professional negligence,[7] and gross negligence, seeking at least $17.5 million in damages.[8] The Appellant filed a motion for partial summary judgment, contending that a provision in both the 2012 and 2013 Contracts expressly limited the amount of damages that the Appellee could recover on any claim to the amount of professional fees MHS had paid to the Appellant, which totaled about $87,000. The

---

[5] Hardwick became the subject of both criminal and civil actions as a result of the embezzlement.

[6] MHS had assigned its claims against the Appellant to the Appellee.

[7] The Appellee attached an expert's affidavit in support of its claim for professional negligence, pursuant to OCGA § 9-11-9.1.

[8] In August 2014, during the investigation into the missing funds, Hardwick returned $2 million to MHS, and the funds were deposited back into the title escrow accounts.

record shows that both four-page contracts[9] contained the following provision ("Provision") near the bottom of the third page:

> **Issue Resolution:**
>
> In the event we are required to respond to a subpoena, court order or other legal process for the production of documents and/or testimony relative to information we obtained and/or prepared during the course of this engagement, you agree to compensate us at our hourly rates, as set forth above, for the time we expend in connection with such response, and to reimburse us for all of our out-of-pocket expenses incurred in that regard.
>
> Should you become dissatisfied with our services at any time, we ask that you bring your dissatisfaction to our attention promptly. If you remain dissatisfied, it is agreed that you will participate in non-binding mediation under the commercial mediation rules of the American Arbitration Association before you assert any claim. In any event, no claim shall be asserted which is in excess of the lesser of actual damages incurred or professional fees paid to us for the engagement.

---

[9] The other sections in the contracts included: "Audit Objective"; "Audit Procedures"; "Management Responsibilities"; "Engagement Administration, Fees, and Other"; and "Conclusion." The 2013 Contract included an additional provision, entitled "Termination." None of these sections addressed damages for breach of contract or negligence, limited the amount of damages recoverable, or referred to the provision at issue on appeal.

In response to the Appellant's motion, the Appellee filed a cross-motion for partial summary judgment, arguing that the Provision was unenforceable as a matter of law because (1) it was not sufficiently prominent to provide notice; (2) it was ambiguous and insufficiently explicit as to whether it applied to the Appellee's claims for professional negligence and gross negligence; and (3) even if the Provision was otherwise enforceable, it was still invalid and unenforceable under Georgia law to the extent it purported to limit the amount of recoverable damages for the Appellee's gross negligence claim.

The trial court conducted a hearing on the motions, during which it ruled that the Provision was unenforceable due to its lack of prominence among the surrounding contract terms, the ambiguous scope of the provision, and its invalidity as to the Appellee's claim for gross negligence. Based on this finding, the court granted the Appellee's cross-motion for partial summary judgment and denied the Appellant's motion. This appeal followed.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment[,] the appellate court is to conduct a de novo review

of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[10]

In addition, because this case involves a contract, we note that

an issue of contract construction is usually a question of law for the court to resolve and, as such, it is subject to de novo review. This review is guided by three fundamental principles of contract construction: (1) If the agreement is unambiguous, the court will look to the contract alone to find the intention of the parties; (2) the existence or nonexistence of an ambiguity is a question of law for the court; and (3) the issue of interpretation becomes a jury question only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.[11]

With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. In several related arguments, the Appellant contends that the trial court erred in holding that the Provision in both contracts was unenforceable as a matter of law and in granting partial summary judgment to the Appellee on that basis. According

---

[10] *Benton*, 280 Ga. at 470 (citations omitted).

[11] *Monitronics Intl. v. Veasley*, 323 Ga. App. 126, 133 (2) (746 SE2d 793) (2013) (physical precedent only) (punctuation and footnotes omitted).

to the Appellant, at the very least, questions of fact existed on this issue for a jury to resolve. We disagree.

> It is the paramount public policy of this state that courts will not lightly interfere with the freedom of parties to contract. A contracting party may waive or renounce that which the law has established in his or her favor, when it does not thereby injure others or affect the public interest. Exculpatory clauses[12] in Georgia are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence. Given this paramount public policy, courts exercise extreme caution in declaring a contract void as against public policy, and should do so only when the case is free from doubt and an injury to the public interest clearly appears.[13]

Nevertheless, "because exculpatory clauses may amount to an accord and satisfaction of future claims and waive substantial rights, they require a meeting of the minds on

---

[12] See *2010-1 SFG Venture LLC v. Lee Bank & Trust Co.*, 332 Ga. App. 894, 897 (1) (a), n. 2 (775 SE2d 243) (2015) (This Court noted that, "[w]hether the clause at issue [was] characterized as a limitation of liability clause or an exculpatory clause [was] immaterial because Georgia case law [did] not appear to treat such clauses differently for purposes of review.") (citation and punctuation omitted); see also *T.S. KAO, Inc. v. North American Bancard*, LLC, 2017 U.S. Dist. LEXIS 219819, * 4 (II) (A) (N.D. Ga. 2017) ("Under Georgia Law, an exculpatory clause is a provision in a contract that severely restricts remedies or waives substantial rights.") (citations and punctuation omitted).

[13] *2010-1 SFG Venture LLC*, 332 Ga. App. at 897-898 (1) (a) (citations, punctuation, and footnote omitted).

9

the subject matter and must be explicit, prominent, clear[,] and unambiguous."[14]

These are "strict requirements for [the] enforceability of [an exculpatory] clause."[15]

(a) As an initial matter, the Appellant contends that the Provision was not prohibited by statute and did not violate public policy and, therefore, the trial court erred in finding the Provision to be unenforceable.[16] However, pretermitting whether the Provision in this case was the type of standard exculpatory clause that generally did not violate public policy, the trial court was still authorized to rule that it was unenforceable as a matter of law if the undisputed evidence of record[17] showed that

---

[14] Id. at 898 (1) (a) (citation and punctuation omitted). See *Dept. of Transp. v. Arapaho Constr.*, 180 Ga. App. 341, 343 (1) (349 SE2d 196) (1986) ("Exculpatory clauses must be clear and unambiguous[;] they must be specific in what they purport to cover[;] and any ambiguity will be construed against the drafter of the instrument.") (citation and punctuation omitted).

[15] *Arapaho Constr.*, 180 Ga. App. at 343 (1).

[16] See generally *TSG Water Resources v. D'Alba & Donovan Certified Public Accountants, P.C.*, 260 Fed. Appx. 191, 204 (V) (11th Cir. 2007) (per curiam) (noting that the appellants had cited no Georgia case law holding that an accounting firm's contract's exculpatory clause – which did not limit the firm's duty of care or preclude legal action against the firm, but simply limited the type of damages that could be sought – violated public policy).

[17] See *Benton*, 280 Ga. at 470 (The moving party is entitled to summary judgment if it shows "that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law.") (citation omitted).

the Provision was not explicit, prominent, clear, and unambiguous.[18] Thus, this argument presents no reversible error.

(b) The record in this case supports the trial court's ruling that the Provision was insufficiently prominent among the surrounding text to be enforced. "In determining whether a limitation of liability clause or an exculpatory clause is sufficiently prominent, courts may consider a number of factors, including whether the clause is contained in a separate paragraph; whether the clause has a separate heading; and whether the clause is distinguished by features such as font size."[19]

The record clearly shows that the Provision is the same font size as that used throughout the entirety of the 2012 and 2013 Contracts, and the Provision is not capitalized, italicized, or set in bold type for emphasis.[20] Further, the Provision is not

---

[18] See *2010-1 SFG Venture LLC*, 332 Ga. App. at 898 (1) (a); *Monotronics Intl.*, 323 Ga. App. at 133 (2) (physical precedent only); see also *T.S. KAO, Inc.*, 2017 U.S. Dist. LEXIS 219819, at * 4 (II) (A) (Exclusionary clauses "are not unenforceable per se, but in order to be enforceable[, they] must be explicit, prominent, clear and unambiguous.") (citations, punctuation, and emphasis omitted).

[19] *2010-1 SFG Venture LLC*, 332 Ga. App. at 898 (1) (a) (citations omitted).

[20] See, e.g., *Monitronics Intl.*, 323 Ga. App. at 133-135 (2) (physical precedent only) (The provision was not "capitalized or set off in any unique or prominent way. To the contrary, this important language is written in the same small, single-spaced typeface as the majority of the contract."); *Parkside Center v. Chicagoland Vending*, 250 Ga. App. 607, 611 (2) (552 SE2d 557) (2001) (The clause at issue had no

set off in a separate section that specifically addressed liability or recoverable damages,[21] with a bold, underlined, capitalized, or italicized specific heading, such as "**Limitation on Liability**"[22] or "DAMAGES."[23] Nor is the Provision in a prominent place within the contracts to emphasize the importance of the Provision's limitation on recoverable damages, such as being adjacent to another similarly significant provision or being next to the parties' signature lines.[24]

---

separate paragraph heading, and the typeface was the same size as in the surrounding paragraphs.); see also *T.S. KAO, Inc.*, 2017 U.S. Dist. LEXIS 219819, at * 3 (II) (The court ruled that, if the class-action waiver at issue was an exculpatory clause, "there [could] be no doubt that it would be unenforceable," given that the clause was in a paragraph with other provisions, the paragraph had no separate heading, and the typeface of the clause was the same size as in the surrounding paragraphs.) (citation omitted).

[21] See, e.g., *Parkside Center*, 250 Ga. App. at 611-612 (2) (provision was in a section under the general heading of "Miscellaneous"); see also *T.S. KAO, Inc.*, 2017 U.S. Dist. LEXIS 219819, at * 3 (II) (clause was in a paragraph with other provisions, and paragraph had no specific heading that called attention to the clause).

[22] See, e.g., *2010-1 SFG Venture LLC*, 332 Ga. App. at 899 (1) (a) ("***Limitation on Liability of SFG***"); *Holmes v. Clear Channel Outdoor*, 284 Ga. App. 474, 476-477 (2) (644 SE2d 311) (2007) ("Hold Harmless/Indemnification[ ]"); *Imaging System Intl. v. Magnetic Resonance Plus*, 227 Ga. App. 641, 645 (1) (490 SE2d 124) (1997) ("*LIMITATION OF LIABILITY*").

[23] See, e.g., *Monitronics Intl.*, 323 Ga. App. at 133 (2) (physical precedent only) ("DAMAGES").

[24] See, e.g., *Grace v. Golden*, 206 Ga. App. 416, 418 (1) (b) (425 SE2d 363) (1992) (The provision was immediately above and adjacent to the signature line for

12

Instead, the Provision is included in a section, generically entitled "**Issue Resolution**," near the bottom of the third page. The single-sentence Provision appears at the very end of the section, which also contains several unrelated provisions regarding, inter alia, MHS's responsibility to compensate the Appellant if it should be required to respond to court orders, subpoenas, etc., related to the audit and to reimburse the Appellant for associated expenses; directing MHS to contact the Appellant if it became dissatisfied with its services; and requiring MHS to participate in mediation to resolve any issues before it filed a claim against the Appellant.[25]

the opposing party.).

[25] See, e.g., *Monotronics Intl.*, 323 Ga. App. at 133-136 (2) (physical precedent only) (Although the provision was in a section entitled "DAMAGES," it was in subsection (e), following several long provisions addressing unrelated issues, and was, as a result, "far removed" from the title that indicated the section's subject matter. This Court concluded that the provision was not explicit and lacked the requisite indicia of prominence and was, therefore, unenforceable.); *Parkside Center*, 250 Ga. App. at 611-612 (2) (The provision was on the last page of a form lease, at the end of a paragraph in a section with the general heading of "Miscellaneous" that also included several paragraphs before and after the provision. This Court concluded that the trial court did not err in finding that the provision was unenforceable because it failed to satisfy the prominence requirement.).

Under the totality of these circumstances, we conclude that the trial court was authorized to find that the provision failed to meet the prominence requirement and, thus, was unenforceable as a matter of law.[26]

(c) Given our decisions in the preceding subsections, the Appellant's remaining arguments are moot.

---

[26] See *Monitronics Intl.*, 323 Ga. App. at 133 (2) (physical precedent only); *Parkside Center*, 250 Ga. App. at 612 (2); see also *Allstate Ins. Co. v. ADT*, 2015 U.S. Dist. LEXIS 133258 (N.D. Ga. 2015) (The provision was printed on the back of a single-page document, in "extremely small print." Even though the provision was capitalized, it was not prominent because most of the surrounding text was also capitalized. The provision was in a section with the heading, "LIMITATION OF LIABILITY," but the section contained several paragraphs, none of which had a subheading, and the provision was in the middle of the section – "far removed" from the heading. The court concluded that the provision did not meet the prominence requirement and, therefore, was unenforceable.); cf. *2010-1 SFG Venture LLC*, 332 Ga. App. at 899 (1) (a) (The provision was set off in its own paragraph with the bold, underlined heading "***Limitation on Liability of SFG***." The provision was part of a collection of similar paragraphs pertaining to the rights and responsibilities of the parties. In addition, the parties negotiated the agreement, and the opposing party helped draft the agreement. In fact, the CEO of the opposing party admitted that he was aware of the limitation of liability provision. This Court held that the trial court erred in ruling that the provision was unenforceable.); *Imaging System Intl.*, 227 Ga. App. at 642-645 (1) (The limitation of liability provision was set off in its own paragraph with the heading "LIMITATION OF LIABILITY" and all of the key language was capitalized; therefore, the provision was prominent and enforceable.); *Grace*, 206 Ga. App. at 417-418 (1) (b) (The provision was on the second page of a two-page deed, next to the signature line of the opposing party, and the typeface used was larger and bolder than the preprinted portions of the deed. Thus, the provision was sufficiently prominent to be enforceable.).

14

2. The Appellant argues that the trial court erred in denying his motion for partial summary judgment, which was based on his contention that the limitation of damages provisions were enforceable and, as a result, the Appellee was limited in the amount of damages it could seek from the Appellant. Given our decision in Division 1, supra, this claim of error is moot.

*Judgment affirmed. Barnes, P. J., concurs. McMillian, J., concurs in judgment only.* \*

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**